UNITED STATES of America, Appellee,

v.

**Leroy RUSH a/k/a James Johnson, Appellant.**

UNITED STATES of America, Appellee,

v.

**Mark Anthony CLOYD, a/k/a Terry J. Francis, Appellant.**

Nos. 86–1811, 86–2227.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1987.

Decided Feb. 25, 1988.

James Delworth, Asst. Federal Public Defender, St. Louis, Mo., for appellants.

Thomas D. Thalken, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before LAY, Chief Judge, HEANEY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Leroy Rush (No. 86–1811) and Mark A. Cloyd (No. 86–2227) appeal from final judgments entered in the District Court[1] for the Eastern District of Missouri and the District Court[2] for the District of Nebraska, respectively, upon jury verdicts finding them guilty of possession of a firearm in violation of 18 U.S.C.App. § 1202(a) (West Supp.1984).[3] Both appeals have been consolidated for en banc consideration of the correct statutory construction of the Armed Career Criminal Act of 1984 (ACCA).[4] Rush and Cloyd have each been convicted of felonious robbery or burglary on three previous occasions. In accordance with 18 U.S.C.App. § 1202(a), as amended by the ACCA, the district court sentenced Rush to fifteen years imprisonment and Cloyd to twenty-five years imprisonment.[5] For reversal, Cloyd and Rush argue that the district court erred in sentencing them under the ACCA amendment because the amendment is not a sentence enhancement provision, but rather defines a separate offense, of which they were not convicted. Because we conclude that the ACCA amendment to § 1202(a) is a sentence enhancement provision, and not a separate statutory offense, we affirm the judgments of the district court as to both Cloyd and Rush.

In each trial, the jury was instructed that it need only find one prior felony conviction in order to find a person in possession of a

1. The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri.

2. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

3. Cloyd was also convicted of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d), and use of a firearm during a bank robbery in violation of 18 U.S.C. § 924(c). Cloyd's convictions were affirmed by a panel of this court, *United States v. Cloyd*, 819 F.2d 836 (8th Cir. 1987), with the exception of the sentence im-

posed under the ACCA, which was referred for en banc consideration. *Id.* at 838.

4. Pub.L. No. 98–473, § 1802, 98 Stat. 2185 (1984). Effective November 15, 1986, the ACCA amendment has been moved into § 924(e)(1). Firearms Owner's Protection Act, Pub.L. No. 99–308, § 104(a), 100 Stat. 456 (1986).

5. Cloyd was also given consecutive sentences of twenty-five years for the armed bank robbery count and five years for the use of a firearm during a bank robbery.

firearm guilty of violating 18 U.S.C.App. § 1202(a). Cloyd and Rush submit that the ACCA establishes a separate crime of possession of a firearm by one who has three previous felony convictions. Under this interpretation, proof of two additional convictions is an essential element of the offense which must be found beyond a reasonable doubt by the jury. Cloyd and Rush therefore contend that because they were never properly convicted of this separate and more serious offense, they may not be sentenced under the more severe provisions of the ACCA. The government submits that the ACCA provision merely enhances the penalty provisions of § 1202(a) for those defendants found by the sentencing judge to have three previous robbery or burglary convictions.

The courts of appeals that have considered this issue have reached differing conclusions. In *United States v. Gregg*, 803 F.2d 568, 570 (10th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987), the Tenth Circuit held that the ACCA "did not create any new federal crime—it only increased the penalty for an already existing federal offense described in Sec. 1202—that crime being the possession of a firearm after being convicted of a felony." Similarly, the Third Circuit concluded that "the members of Congress viewed the Armed Career Criminal Act as a statute providing for an enhanced penalty, and we construe it consistently

with that legislative intent." *United States v. Hawkins*, 811 F.2d 210, 220 (3d Cir.1987) (*Hawkins*). The District of Columbia Circuit likewise interpreted the ACCA as merely "enhancing" the otherwise applicable sentencing provisions of § 1202(a). *United States v. Jackson*, 824 F.2d 21, 22–26 (D.C.Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988) (*Jackson*). Most recently, the Ninth Circuit held that the ACCA "is a sentence enhancement, and not a separate statutory offense." *United States v. West*, 826 F.2d 909, 911 (9th Cir.1987) (*West*).

On the other hand, the Fifth Circuit reached the opposite result, concluding that the ACCA is not merely a sentence enhancement provision, but creates a new federal offense. *United States v. Davis*, 801 F.2d 754, 755–56 (5th Cir.1986) The Sixth Circuit reached the same conclusion in *United States v. Brewer*, 841 F.2d 667 (6th Cir.1988). *See also Hawkins*, 811 F.2d at 220 (Rosenn, J., concurring in part and dissenting in part).

The resolution of this question of statutory intent hinges on the intent of Congress. *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (*Garrett*). In divining congressional intent, we first look to the language and structure of 18 U.S.C.App. § 1202(a), as amended by the ACCA.[6] *See Garrett*, 471

---

6. Title 18 U.S.C. App. § 1202(a) (West Supp. 1984), with the ACCA amendment highlighted, provides:

   Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
   (2) has been discharged from the Armed Forces under dishonorable conditions, or
   (3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or
   (4) having been a citizen of the United States has renounced his citizenship, or
   (5) being an alien is illegally or unlawfully in the United States, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. **In the case of a person who receives, possesses, or transports in com-**

**merce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.**

   Congress has clearly identified the ACCA amendment as a sentence enhancement provision by moving it into 18 U.S.C. § 924(e)(1), as noted *supra*, note 4. The legislative history of the Firearms Owner's Protection Act is silent, however, as to the purpose of the ACCA amendment as originally incorporated in 18 U.S.C.App. § 1202(a).

U.S. at 779–82, 105 S.Ct. at 2412–14. Unfortunately, the statute is not a model of clarity.

In some respects, the ACCA amendment resembles a sentence-enhancement provision. Beginning with the phrase "in the case of," the ACCA amendment appears to relate back to the preceding sentence of the statute. While the first sentence lists the classes of persons who are prohibited from receiving, transporting, or possessing firearms, the second sentence seems to do no more than single out a portion of one of these classes for more severe punishment. Additionally, as the Third Circuit noted, "the inclusion of the Armed Career Criminal Act into the same paragraph as the previously enacted section 1202(a)(1) with no division into separate numbers or letters, suggests treatment of the contents as a single offense." *Hawkins,* 811 F.2d at 218–19. *See also West,* 826 F.2d at 911; *Jackson,* 824 F.2d at 23.

On the other hand, the ACCA amendment repeats the possession and commerce elements of § 1202(a)(1) and could stand on its own as an independent separate offense. As the Fifth Circuit pointed out, the ACCA amendment also "lacks other common indicia of sentence-enhancement provisions," such as an explicit reference to a conviction under § 1202(a)(1), a penalty derived as a multiplier of § 1202(a)(1), procedures for a sentencing hearing, or a title identifying the amendment as a sentence enhancement provision. *Davis,* 801 F.2d at 755–56. *Cf.* 18 U.S.C. § 3575 (Supp. III 1985) ("Increased sentence for dangerous special offenders" provision with detailed procedures for sentencing hearing); 21 U.S.C. § 849 (1982) ("Dangerous special drug offender sentencing" provision, also containing detailed sentencing procedures).

We find some merit in each of these competing interpretations of the language and structure of § 1202(a). Finding the plain language and structure of the statute to be inconclusive, we turn for guidance to the legislative history of the ACCA amendment.

The earliest versions of the ACCA clearly proposed a new federal offense. *See* S. 52, 98th Cong., 1st Sess. § 2 (1983) (federal offense of robbery or burglary if committed with a firearm by a defendant with two or more previous robbery or burglary convictions); H.R. 1627, 98th Cong., 1st Sess. § 2 (1983) (federal offense for a defendant with two prior robbery or burglary convictions to commit any robbery or burglary with a firearm). This approach was ultimately rejected, however, due to "serious reservations as to the appropriateness of prosecutions of local burglaries or robberies under a federal statute." H.R.Rep. No. 1073, 98th Cong., 2d Sess. at 4 (1984), U.S. Code Cong. & Admin.News 1984, pp. 3182, 3664 (House Report). Instead, H.R. 6248 was introduced as a means of accomplishing the same penal goals without expanding the federal criminal law into existing state criminal law. The House Report accompanying H.R. 6248, which ultimately formed the basis of the ACCA, explained the purpose of the bill:

> In *"enhancing" this offense,* [§ 1202(a)(1),] *with* H.R. 1627–type *sanctions,* if the defendant has been convicted three times of robbery or burglary, we are *enhancing an existing Federal crime,* which would alleviate many of the problems associated with H.R. 1627 such as the issue of a local D.A. veto or the difficulties encountered by Federal Courts in applying state robbery and burglary laws in Federal prosecutions.

House Report at 5, U.S.Code Cong. & Admin.News p. 3665 (emphasis added). The House Report also explains that if "circumstances warrant prosecution under the *enhanced penalty provisions* of this bill, the mandatory fifteen-year penalty is available." *Id.* (emphasis added). While the House Report is not entirely free from ambiguity,[7] we are nevertheless satisfied that the weight of the legislative history supports an interpretation of the ACCA

---

7. The House Report also states that the ACCA "amends 18 U.S.C.App. § 1202(a) *by adding a new offense.*" H.R.Rep. No. 1073, 98th Cong., 2d Sess. at 6 (1984), U.S.Code Cong. & Admin. News 1984, p. 3666.

amendment as a sentence enhancement provision.

We are buttressed in this conclusion by remarks made in floor debates by the principal sponsors of the ACCA in both the House and the Senate. Senator Specter, the principal sponsor of the ACCA in the Senate, stated:

*This bill would create no new Federal crime.* Under present section 1202(a), possession of a firearm by a convicted felon is already a federal crime, with a maximum prison sentence of 2 years. This title would *simply provide for a stiffer sentence* for career criminals. It would not permit the Federal prosecution of any individual who could not be prosecuted under current Federal law, and would not trespass upon any State prosecutions or require Federal courts to apply State law.

130 Cong.Rec. S13,030 (daily ed. Oct. 4, 1984) (emphasis added). Representative Hughes, the principal sponsor of the ACCA in the House, stated:

This bill would *enhance the sanctions* of 18 U.S.C. app. section 1202(a) with a 15 year minimum sentence if the defendant has been convicted three times of felonies for robbery or burglary.

130 Cong.Rec. H10,550 (daily ed. Oct. 1, 1984) (emphasis added). Several other statements were made to the same effect. *See, e.g.,* 130 Cong.Rec. H10,550 (daily ed. Oct. 2, 1984) (statement of Rep. Sawyer) ("H.R. 6248 takes an existing gun possession statute and *enhances the penalty* for any violation by a person having been previously convicted three times for armed burglary and robbery") (emphasis added); 130 Cong.Rec. H11,982 (daily ed. Oct. 10, 1984) (statement of Rep. Smith) (bill "provides *enhanced penalties* for career criminals possessing a firearm") (emphasis added).

We therefore conclude that Congress intended the ACCA to provide enhanced penalties for those who violate § 1202(a) after being convicted three times of burglary or robbery. The judgment of the district court, sentencing Cloyd and Rush under the provisions of the ACCA, is therefore affirmed.

JOHN R. GIBSON, Circuit Judge, dissenting, joined by LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

I respectfully dissent.

The court today makes clear that it views the language and structure of the ACCA, 18 U.S.C.App. § 1202(a), as inconclusive as to whether the Act is a sentencing enhancement or a new offense. While the court states that the weight of legislative history supports the sentencing enhancement interpretation, it concludes that the House report is not entirely free from ambiguity. The court essentially resolves the issue only by looking to the statements of Senator Specter and Representative Hughes.

I believe that the language and structure of the Act demonstrate creation of a separate offense, and that this conclusion is borne out by the legislative report when it is carefully studied. While, taken literally, the statements of Senator Specter and Representative Hughes are at variance with both the language and structure of the Act and the report, I do not believe they were meant to address the question before the court, or if they were, that they could override the language of the ACCA as enacted.

As the court today recognizes, the issue in this case has been considered by a number of the circuits. I find most persuasive the views of Judge Rubin of the Fifth Circuit in *United States v. Davis,* 801 F.2d 754 (5th Cir.1986), and Judge Rosenn of the Third Circuit in his dissent in *United States v. Hawkins,* 811 F.2d 210, 223–25 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987). We need not repeat in detail the strong and convincing reasoning articulated by those judges.

The language and structure of the ACCA itself indicates that the ACCA is an independent criminal offense, rather than simply a sentence enhancer engrafted onto section 1202(a)(1). The ACCA describes the acts it proscribes without any reference to section 1202(a)(1), except to specify

which courts' convictions are relevant. Moreover, as in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 2413, 85 L.Ed. 2d 764 (1985), the existence of a discrete offense is indicated by the fact that the provision carries its own penalty, "rather than a multiplier of the penalty established for some other offense." As noted by Judge Rubin in *United States v. Davis,* 801 F.2d at 756, the ACCA also lacks the typical indicia of sentence-enhancing statutes, which usually provide sentencing procedures and are titled as sentencing provisions. *See, e.g.,* 18 U.S.C. § 3575 (1982) (repealed effective 1986) and 21 U.S.C. § 849 (1982) (repealed effective 1987). Nothing in the statutory language suggests that the ACCA is anything other than an independent provision for a new criminal offense. *See also Davis,* 801 F.2d at 755–56; *United States v. Hawkins,* 811 F.2d at 223–25 (Rosenn, J., dissenting).

The legislative history also supports the conclusion that the ACCA creates a new offense. The House report on the final version of the ACCA discussed " 'enhancing' this offense," " 'enhancing' an existing Federal crime", and "adding a new offense." H.R.Rep. No. 1073, 98th Cong., 2d Sess. 5–6 (1984), U.S.Code Cong. & Admin. News 1984, pp. 3664–3666. It is true that the report, as the court's opinion points out, also refers to "enhanced penalty provisions." H.R.Rep. No. 1073 at 5. *See also id.* at 1 ("enhanced penalties"). However, the language of the report, while seemingly containing this ambiguity, when taken in context demonstrates that Congress intended to enhance the offense or crime, rather than the penalty.

The evolution of the Act in Congress, as described in the House report, was from a wide-ranging provision with no interstate commerce moorings to a traditional, federal interstate-commerce related crime; nothing in this evolution addressed the question of changing the bill from its original status as a new crime to that of a penalty enhancement. The report first outlines the history of the earlier bills, S. 52, 98th Cong., 1st Sess. (1983), and H.R. 1627, 98th Cong., 1st Sess. (1983), which were patently designed to create a new crime, but which drew

widespread objection because they created a federal offense for any robbery or burglary committed with a firearm if the defendant had two or more previous robbery or burglary convictions, without any reference to the weapon being possessed, received, or transported in interstate commerce. In response to federalism objections that the bills would make federal crimes of purely local robberies and burglaries, Chairman Hughes suggested enacting the basic ACCA provisions as a markup to existing 18 U.S.C.App. § 1202(a), which had an interstate commerce limitation. H.R. Rep. No. 1073 at 4.

Nothing in the legislative process as described in the report indicates an intent to change the ACCA from its original status as a new offense to a penalty-enhancer; the lack of an interstate commerce limitation was a different problem, and there is no reason to believe Congress' resolution of that problem has any bearing on the question before us. Moreover, study of the report shows that the drafters used the "enhanced offense" and "enhanced crime" language where they were engaged in careful legal analysis of the effect of the bill. Under the heading "Sectional Analysis," the report makes clear that "section 2 amends 18 U.S.C.App. § 1202(a) by adding a new offense * * *." H.R.Rep. No. 1073 at 6, U.S.Code Cong. & Admin.News 1984, p. 3666. The references to "enhanced penalty" are more casual, occurring in more general discussions in the report. I read the House report as clearly evidencing Congress' realization that it was the crime or offense that was being enhanced by creating a higher grade of the crime, rather than merely adding to the sentencing provisions. *See Davis,* 801 F.2d at 756.

Similarly, the statements of Senator Specter and Representative Hughes should be seen as limited to discussion of the federalism concerns that plagued the earlier bills. I believe that the language, structure, and legislative history of the statute is clear. The comments of Chief Justice Rehnquist in *Regan v. Wald,* 468 U.S. 222, 104 S.Ct. 3026, 3035, 82 L.Ed.2d 171 (1984), aptly fit this case:

Oral testimony of witnesses and individual Congressmen, unless very precisely directed to the intended meaning of particular words in a statute, can seldom be expected to be as precise as the enacted language itself. To permit what we regard as clear statutory language to be materially altered by such colloquies, which often take place before the bill has achieved its final form, would open the door to the inadvertent, or perhaps even planned, undermining of the language actually voted on by Congress and signed into law by the President.

Congress, by its use of language and structure, showed it intended to enact exactly what the House Committee Report describes—a separate offense. This articulated intent makes rational the fifteen-year sentence without probation or parole, as opposed to the maximum two-year sentence for a first time offender. Judge Rosenn forcefully argued in his *Hawkins* dissent that to apply this statute as a sentencing enhancement violates the due process clause. 811 F.2d at 223–24. We should avoid interpreting the statute to require this result.

In *United States v. Jackson*, 824 F.2d 21, 25 (D.C.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988), the court reasoned that the ACCA did not create a separate offense because, if it did, the government would have to prove the three prior felony convictions before the jury, and this would violate the congressional policy against putting a defendant's previous convictions before the jury. 824 F.2d at 25. However, section 1202(a)(1) itself calls for proof of a prior conviction as an element of the crime, *United States v. Blade*, 811 F.2d 461, 466 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 124, 98 L.Ed.2d 82 (1987), and it is not erroneous to allow proof of more than one previous felony in a section 1202(a)(1) case. *Id.* Obviously, Congress does not invariably choose against allowing introduction of past felony convictions, and that "policy" should not weigh on either side in this argument.

Since the language and the structure of the ACCA and its history indicate that it creates a separate offense on which neither Cloyd nor Rush's jury was instructed, I would reverse.