**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Louis PIROVOLOS,**
**Defendant–Appellant.**

**No. 87–1106.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1987.

Decided April 6, 1988.

Rehearing and Rehearing En Banc
Denied May 3, 1988.

Constantine John Gekas, Chicago, Ill., for defendant-appellant.

Mark L. Rotert, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, WOOD and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

On November 19, 1986, a jury found defendant-appellant Louis Pirovolos guilty of

violating the Armed Career Criminal Act of 1984, 18 App. U.S.C. § 1202 (1982 and Supp. III 1985) ("the Act"). On January 14, 1987, the presiding judge sentenced Pirovolos to twenty years in prison, with a mandatory term of fifteen years without probation or parole. The Act provides that

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

\* \* \* \* \* \*

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. *In the case of a person* who receives, possesses, or transports in commerce or affecting commerce any firearm and *who has three previous convictions* by any court referred to in paragraph (1) of this subsection *for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and,* notwithstanding any other provision of law, *the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.*

18 App. U.S.C. § 1202(a) (emphasis added).[1] Pirovolos challenges his conviction on two primary grounds. First, Pirovolos argues that the trial judge erred in allowing the prosecution to present proof of Pirovolos's prior convictions and of two other incidents linking Pirovolos with weapons. Second, Pirovolos asserts that prosecutorial misconduct deprived him of a fair trial.[2] While

---

1. Congress chose to provide greater penalties for three-time robbers and burglars because it found that those crimes presented particularly high rates of recidivism, coupled with a substantial threat of violence. H.R.Rep. No. 1073, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3661, 3663 (quoting explanation by Sen. Arlen Specter); *see also United States v. Hawkins,* 811 F.2d 210, 216–17 (3d Cir.1987) (heightened punishment for burglars and robbers does not violate equal protection).

2. Pirovolos also has advanced other arguments for overturning his conviction, but we deem those arguments meritless. Therefore, we confine our discussion to the issues described above.

we agree that the trial judge erred in admitting evidence of the prior convictions and that one of the prosecutors at times conceivably may have overstepped the bounds of proper advocacy, we find that those imperfections did not compromise the fairness of the trial. We affirm Pirovolos's conviction.

## FACTS

### I. *The Repossession*

On Sunday evening, July 21, 1985, three men drove to Steger, Illinois, to repossess a Chevrolet Cavalier owned by Pirovolos. Two of the men, George Katz and Wes Bauer, worked for Equitable Services, a Chicago corporation that had been authorized by the lienholder bank to repossess the car. Katz had been convicted of several felonies, including burglary, possession of burglary tools, and theft. Bauer had been convicted of burglary and possession of marijuana. The third man was Michael Morris, an acquaintance of Bauer. Morris did not work for Equitable Services.

At about 10:30 p.m., the men arrived in Steger and stopped at the village police department. There they notified the police that they were to repossess the automobile and they showed the police the authorization form issued by Equitable Services. Officer Wayne Siegrist then decided that he and another Steger police officer, Mark Paoella, would accompany the repossessors to prevent any breach of the peace. At about 11:00 p.m., Katz, Bauer, and Morris arrived at Pirovolos's restaurant, Louie's Little Derby Restaurant. The Cavalier was parked in front of the restaurant. Officers Siegrist and Paoella arrived soon thereafter and parked nearby in their marked squad car. The parties dispute the events that followed.

At trial, Pirovolos maintained that he possessed a gun only momentarily for self-defense. He testified to the following. He had closed the restaurant for the evening and was at the cash register counting the weekend receipts when Connie Schoonover, a waitress, called his attention to three men surrounding his car in the restaurant's parking lot. He ran outside to confront the men. The repossessors did not identify themselves as such, but instead attacked Pirovolos. One of them struck him on the back of the head with a metal object. Pirovolos struggled to escape his attackers and looked up in time to see that one of the repossessors had started the Cavalier and was driving toward him as if trying to run him over. Pirovolos then ran to the restaurant's front door, yelling for Chris Kaperonis, the cook, to get him a baseball bat he kept in the restaurant. He was met in the doorway by Kaperonis, who handed him a revolver. Because Kaperonis was blocking the doorway, Pirovolos could not retreat inside the restaurant. Instead, he turned and fired three, four, or five shots at the car as it veered past him. Pirovolos testified that he intentionally fired low, at the car's tires, so that he would not hurt anyone but would make apprehension of the "thieves" easier for the police. Finally, Pirovolos claimed that the revolver belonged to the cook, that he had never seen the gun before, and that he "never kept a gun in the Little Derby Restaurant."

Prosecution witnesses painted a very different picture. Bauer testified that Pirovolos emerged from the restaurant while Katz sat in the Cavalier attempting to start it and Bauer and Morris stood nearby. Bauer testified that he told Pirovolos that he, Katz, and Morris were repossessing the car, showed Pirovolos the repossession order, and invited Pirovolos to check the repossessors' authority with the police. Bauer, Katz, Morris, and Officers Siegrist and Paoella testified that no one assaulted Pirovolos or attempted to drive the Cavalier toward him. Each of those witnesses further testified that, after confronting the repossessors, Pirovolos walked back to the front door of the restaurant. Bauer testified that Pirovolos met another man in the doorway, said something to the other man in a foreign language, then turned back toward the parking lot, now holding a gun. Katz testified similarly. Bauer, Katz, and Morris testified that Pirovolos next returned to the parking lot, pistol in hand, and fired five or six shots while running

after the Cavalier as Katz drove it out of the parking lot and down the street.

Officers Siegrist and Paoella testified that they were preparing to return to the police station when they heard several shots. They looked up in time to see Pirovolos running after the Cavalier, firing as he ran. They then drew their guns, ran after Pirovolos, and arrested him. When the officers reached Pirovolos, they found a .32 caliber revolver in his pocket with all six chambers empty. Subsequent investigation revealed three bullet marks in the passenger door of the Cavalier, two on the wall of a children's day care center across the street from the restaurant, and one in a gas station sign, also across the street from the restaurant. Finally, Paoella testified that after Pirovolos's arrest, while Pirovolos was in his cell at the police station, he heard Pirovolos complain, "What kind of country is this when you can't even kill someone for stealing your car?"

Kaperonis also testified for the prosecution. Like Bauer, Katz, Morris, and the police officers, he disagreed with Pirovolos's account of the incident. Kaperonis testified that he saw the three men near the Cavalier and told Pirovolos that they were there. Pirovolos then ran outside. Kaperonis testified that Pirovolos talked with the men and tried to open the Cavalier's driver's side door as one of the repossessors sat inside trying to start the car. The other two repossessors pushed or pulled Pirovolos away from the car, but they did not otherwise assault Pirovolos and they carried no weapons. Further, no one tried to run over Pirovolos. Pirovolos then reentered the restaurant, took a pistol from a cabinet beneath the cash register, and ran back outside. Kaperonis followed Pirovolos outside and saw him shoot at the Cavalier as it turned out of the restaurant parking lot and headed down the street.[3]

II. *Proceedings Before the Trial Court*

On August 15, 1986, a grand jury indicted Pirovolos, charging him with violating 18 App. U.S.C. § 1202(a)(1). The indictment specifically alleged that Pirovolos previously had been convicted of three armed robberies and it listed the three prior convictions and identified them by date, court, title of offense, and case number. Before trial, Pirovolos moved to strike the indictment's reference to the prior convictions and offered instead to stipulate simply that he had been convicted of a felony. Pirovolos also moved to limit the prosecution's proof at trial accordingly. He based the motion and stipulation on his understanding that section 1202 required the prosecution to prove only a single prior felony conviction to convict a defendant, with any further convictions presented to the judge after trial for sentencing. Thus, Pirovolos urged that any further mention at trial of the prior convictions would be both unnecessary and prejudicial.

The government accepted the defendant's view of the law, agreed to the stipulation, and prepared an amended indictment that stated only that Pirovolos had previously been convicted of a felony. The government also conceded that the convictions were unavailable for impeachment because they were more than ten years old. *See* Fed.R.Evid. 609(b). Additionally, the parties stipulated that ownership of the gun that Pirovolos used could not be traced. On November 12, 1986, the trial commenced with the amended indictment and stipulations in place.

On the morning of the second day of the trial, the government filed a "Motion to Reconsider Stipulation Regarding Felony Conviction." Citing *United States v. Davis*, 801 F.2d 754 (5th Cir.1986), a case then only a month old, the prosecution argued that the two clauses of section 1202(a)(1) defined separate offenses, thus the government could not convict Pirovolos of the more serious offense—possession of a gun by one three times convicted of robbery or burglary—without proving the requisite three prior offenses. The prosecution also notified the court of *United*

---

**3.** Waitress Schoonover also was in the restaurant during the incident, but she did not see the events that occurred in the parking lot.

*States v. Gregg,* 803 F.2d 568 (10th Cir. 1986), a case reaching the opposite result. *Gregg* held that the second clause of section 1202(a)(1) merely enhanced the sentence available under section 1202(a)(1) in appropriate cases and did not state a separate offense; therefore, only a single felony was required to convict a defendant under section 1202(a)(1) and additional offenses were relevant only for sentencing. Thus, *Gregg* was consonant with the agreement reached by the parties prior to trial.

The district judge granted the defense a day to consider the government's motion while the prosecution continued with its case-in-chief and the judge reviewed *Davis* and *Gregg.* On the morning of the third day of the trial, the judge announced to counsel that he believed that the *Davis* court was correct in holding that the second part of section 1202(a)(1) stated a separate offense, an offense that required proof of three prior robbery or burglary convictions. When defense counsel failed to convince the trial judge that Pirovolos would be prejudiced by the change in allowable proof, the judge went forward with the trial, now following the *Davis* approach. Therefore, the court admitted into evidence certified records of Pirovolos's prior armed robbery convictions, which the prosecutor published to the jury. Later, when Pirovolos took the stand, the court allowed the prosecution to cross-examine him briefly on the three convictions. In each instance, defense counsel objected to the court's admission of evidence of the prior convictions.

In addition to the prior convictions, the prosecution cross-examined Pirovolos about two other incidents involving firearms at Louie's Little Derby Restaurant. Defense counsel objected to both questions, but the trial judge overruled the objections. First, the prosecution asked Pirovolos whether, on June 20, 1983, Steger police found a .25 caliber revolver at the restaurant during their investigation of a burglary there. Pirovolos denied such a discovery. Second, the prosecution asked Pirovolos whether, on May 11, 1986, police found a .32 caliber pistol in the cabinet beneath the cash register when they responded to reports of an argument between Pirovolos and a custom-er. Pirovolos admitted that the gun was in the cabinet, that he knew it was there, and that he "had access" to it, but claimed the gun belonged to his father-in-law.

Finally, the prosecution made several comments during closing and rebuttal arguments that Pirovolos now raises as error. In its closing argument, the prosecution on three separate occasions referred to the prior convictions that the court admitted into evidence: once in describing the indictment, once in reviewing the elements of the crime charged, and another time in asserting that Pirovolos's prior convictions were undisputed. Defense counsel did not object to those comments.

The government also made three arguments during rebuttal that Pirovolos now cites as prejudicial. First, apparently in response to Pirovolos's impeachment of Katz and Bauer by their criminal records (Pirovolos characterized them as "thugs"), the prosecution invited the jury to compare Katz and Bauer, who were "going on with their lives," to Pirovolos. The prosecutor argued, "You can look at Mr. Pirovolos and time and time again he gets in trouble with the law, like he did in this case." The court overruled defense counsel's objection to that argument. Later in rebuttal, the prosecution asserted that the gun that Pirovolos used was "a hot gun, you can't trace it to anybody. Sure, he probably went out and bought it off the street ..." And last, near the end of rebuttal, the prosecution asked:

> "What about the Day Care Center, ladies and gentlemen? This took place at 11:00 o'clock at night. What would have happened if these repossessors came by in the morning and tried to repossess the car when there were children around?"

The court sustained defense counsel's objections to both of the latter comments.

## ANALYSIS

### I. *Evidentiary Issues*

#### A. Admission of Evidence of Prior Convictions

█ When the prosecution asked to be allowed to present evidence of Pirovolos's

prior convictions, the trial judge faced a dilemma. If the Fifth Circuit's holding in *Davis* were correct, the judge was required to admit evidence of the prior convictions. The *Davis* court held that the Act was not merely a sentence-enhancement provision, but rather that it created a new offense. Prior conviction of three burglaries or robberies was a distinct element of the offense; therefore, failure to list the prior convictions in the indictment or to prove them at trial would preclude conviction. *See United States v. Davis,* 801 F.2d 754, 756 (5th Cir.1986) (failure to list prior convictions in indictment fatal to conviction). On the other hand, if the Tenth Circuit's *Gregg* decision were right, the judge was prohibited from admitting such evidence. The *Gregg* court held that section 1202(a)(1) stated only one offense—possession of a weapon by a felon. Under *Gregg*, additional convictions were relevant only for sentencing; admission at trial of evidence of multiple convictions not only would be unnecessary but also would be prejudicial. *United States v. Gregg,* 803 F.2d 568, 570 (10th Cir.1986). The two approaches could not coexist and this court had not spoken on the question.[4]

The trial court decided to follow *Davis.* In hindsight, that decision was erroneous. The government now concedes that the second sentence of section 1202(a)(1) is merely a sentence-enhancement provision. Since Pirovolos's trial, the District of Columbia, Third, Eighth, and Ninth Circuits have joined the Tenth Circuit in concluding that section 1202(a)(1)'s treatment of three-time burglars and robbers does not create a separate offense. *United States v. Rush,* 840 F.2d 574 (8th Cir.1988) (en banc); *United States v. West,* 826 F.2d 909 (9th Cir. 1987); *United States v. Jackson,* 824 F.2d 21 (D.C.Cir.1987); *United States v. Hawkins,* 811 F.2d 210 (3d Cir.1987); *Gregg,*

803 F.2d at 570. Furthermore, in 1986, Congress reorganized and recodified the various federal provisions regulating the possession of weapons by "unqualified persons." H.R.Rep. No. 495, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Ad.News 1327, 1328. As revised, the statute clearly makes possession of weapons by all convicted felons a single offense, with additional convictions relevant only for sentencing. One section of the new law, captioned "Unlawful Acts," declares, "It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1) (Supp. IV 1986). A separate section, captioned "Penalties," provides that,

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

*Id.* at section 924(e)(1). Thus, subsequent events have made clear that the *Gregg* approach was correct. The trial judge should not have admitted evidence of Pirovolos's prior convictions; the defense's proferred stipulation that Pirovolos has been convicted of a prior felony was sufficient.[5]

---

**4.** Contrary to the assertion Pirovolos advances in his brief, we did not decide this issue in *United States v. Romero,* 603 F.2d 640 (7th Cir. 1979). In *Romero,* we held only that evidence of multiple convictions was inadmissible to prove guilt under an earlier statute which required proof of only a single conviction. The statute tested in *Romero* did not provide for greater punishment of repeat offenders and so

did not raise the question we face here. *Id.* at 640–41.

**5.** Because Congress has revised the statute in question and because we ultimately decide this case on other grounds, we need not discuss the meaning of section 1202 as thoroughly as we otherwise would. For a discussion of the Act's legislative history, *see Rush,* 840 F.2d at 577; *id.*

■ Our conclusion that the trial court erred in admitting evidence of Pirovolos's prior convictions necessarily leads us to the next issue, the probable effect of the erroneously admitted evidence. In a federal criminal trial, an error in admitting evidence will be held harmless "[o]nly if 'we are convinced that "the error did not influence the jury, or had but very slight effect," and can say "with fair assurance, after stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." ' " *United States v. Shackleford,* 738 F.2d 776, 783 (7th Cir.1984) (quoting *United States v. Shepard,* 576 F.2d 719, 723–24 (7th Cir. 1978) (quoting *Kotteakos v. U.S.,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946))). Or, more simply, we will reverse a conviction only if the error may have had a "substantial influence" on the outcome of the case. *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248. Based on the record before us, we are confident that admission of evidence of Pirovolos's prior convictions had no substantial influence on the jury's verdict.

First, the evidence of Pirovolos's earlier convictions added very little to the case against Pirovolos. Even under the *Gregg* standard, the jury would have known that Pirovolos was a convicted felon. *Gregg,* 803 F.2d at 571 (proof of prior felony conviction required to convict under section 1202(a)). In addition, the prosecutor's cross-examination of Pirovolos did not stray beyond merely establishing the convictions. No potentially damaging details of those offenses reached the jury.[6] Thus, we are convinced that revealing Pirovolos's prior convictions probably did not substantially affect the jury's decision.

At the same time, the evidence against Pirovolos's self-defense argument was more than overwhelming. The Fifth Circuit has delineated the elements of self-defense as a defense to a section 1202 prosecution.

> Where a convicted felon, reacting out of a reasonable fear for the life or safety of himself, in the actual, physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose or in the course of defending himself, he is not guilty of violating 1202(a)(1).

*United States v. Panter,* 688 F.2d 268, 272 (5th Cir.1982); *see also United States v. Wheeler,* 800 F.2d 100, 107 (7th Cir.1986) (recognizing similar defense of justification). However, the rule announced in *Panter* "protects a § 1202 defendant only for possession during the time he is endangered. Possession either before the danger or for any significant period thereafter remains a violation." *Id.* The limited nature of the affirmative defense of self-defense is fatal to Pirovolos's claim.

Six people other than Pirovolos saw the events that took place in the parking lot at Louie's Little Derby Restaurant: Bauer, Katz, Morris, Kaperonis, and Officers Seig-

at 579 (Gibson, J., dissenting); *West,* 826 F.2d at 911–12; *Jackson,* 824 F.2d at 24–25; *Hawkins,* 811 F.2d at 218–20; *Davis,* 801 F.2d at 756. For a discussion of the dangers inherent in admitting evidence or prior convictions in section 1202 prosecutions, *see Jackson,* 824 F.2d at 25–26; *Romero,* 603 F.2d at 641.

**6.** The following is the full text of that portion of the cross-examination.
BY MR. CONWAY [for the prosecution]: Q Mr. Pirovolos, first of all, let's get a few things straight between us; see if you will agree with me.
First of all, you were convicted in December of 1973 for armed robbery; isn't that correct?
MR. GEKAS [for the defense]: Objection, your Honor.
THE COURT: Grounds?

MR. GEKAS: Your Honor, I thought this was the subject of a pre-trial.
THE COURT: He may inquire.
THE WITNESS: Yes, sir.
BY MR. CONWAY: Q Isn't it true—
THE COURT: It was, but is it substantive evidence and for that reason he may inquire.
BY MR. CONWAY: Q And that was in Cook County; correct?
A Yes, sir.
Q And on that very same day you were convicted in another separate case of armed robbery; isn't that true?
A Yes, sir.
Q And you were also convicted on that very same day of another armed robbery in a separate case; isn't that true?
A Yes, sir.
Tr., November 17, 1986, 170–71.

rist and Paoella. None of them saw anyone attack Pirovolos or try to run over him with the Cavalier. Thus, there is no support other than Pirovolos's own self-serving testimony for his first contention, that he reasonably believed himself to be in grave danger. Even more damaging to Pirovolos's story, however, all six eyewitnesses testified that they saw Pirovolos firing at the Cavalier as it drove away from him, out of the parking lot, and down the street. Physical evidence corroborates the eyewitness testimony. The bullet marks in the door of the Cavalier show that the car was not heading directly toward Pirovolos when he fired. Thus, even if we assume that the repossessors had assaulted Pirovolos and had tried to run over him with the Cavalier (an assumption contradicted by all six eyewitnesses), both eyewitness testimony and physical evidence indicate that, at best, if we were to lend credence to Pirovolos's testimony concerning this issue, he carried his "self-defense" beyond the time during which he could have been endangered.

Even Pirovolos's own account of the events in the parking lot casts doubt on his assertion of self-defense. On direct examination, Pirovolos explained the placement of the bullet marks by saying that he intentionally fired at the car's tires so that police would catch the perceived thieves more easily. If Pirovolos meant that this was his only motive, he admitted that he did not act in self-defense. Helping the police is not within the *Panter* definition of self-defense. *Panter*, 688 F.2d at 272. If Pirovolos meant that he was acting with dual intent—both to defend himself and to help the police—he asked the jury to believe that he possessed an extraordinarily clear mind under extremely trying circumstances. Pirovolos's story was, in a word, preposterous. The jury chose not to believe it, and we are firmly convinced that eliminating any reference to the prior convictions would not have affected their choice.

### B. Cross–Examination on Earlier Incidents Involving Firearms

■ Pirovolos next contends that the trial judge should not have permitted cross-examination regarding the two other times Steger police allegedly found guns at Louie's Little Derby Restaurant. Pirovolos characterizes this information as "propensity" evidence, inadmissible under the Federal Rules of Evidence. *See* Fed.R.Evid. 404(b). The government contends that the evidence was admitted properly under Rule 404(b)'s exception for "other purposes, such as proof of motive ... [or] intent." *Id.* On review, we will not disturb the district court's Rule 404(b) finding unless the finding constitutes an abuse of discretion. *United States v. Swiatvk*, 819 F.2d 721, 727 (7th Cir.1987). The district court's admission of evidence of prior acts will be upheld if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Shackleford*, 738 F.2d at 779 (citation omitted).

■ When Pirovolos chose to rely on self-defense as an affirmative defense, he placed his intent in possessing a gun during the parking lot incident directly at issue. Furthermore, Pirovolos's testimony that he never kept a gun in his restaurant opened the door to impeachment on that issue. The government's theory of the case was that Pirovolos routinely kept a pistol in the restaurant in case of trouble. Pirovolos, on the other hand, claimed that he never kept a gun there and took possession of the weapon at issue only briefly, in self-defense. Thus, the government's questions whether police found other guns at the restaurant were "directed toward establishing ... matter[s] in issue other than the defendant's propensity to commit the crime charged," the viability of Pirovolos's self-defense claim and his credibility. *Id.* The presence of other pistols in the restaurant made Pirovolos's version of the

events in the parking lot less likely and the government's version more likely. Also, Pirovolos's admission that he knew about and had access to the gun found in the cabinet revealed his earlier testimony to be, at best, a half-truth. Therefore, the cross-examination did not offend the first prong of the *Shackleford* test.

Second, the evidence was similar enough and close enough in time to be relevant to the matter in issue. Pirovolos admitted that on May 11, 1986, police found the same caliber and type of weapon—a .32 caliber piltol—in the same place from which Kaperonis testified that Pirovolos got the weapon he used in the parking lot—a cabinet beneath the cash register. Pirovolos further admitted that he knew that the pistol was in the cabinet and that he had access to it. This was a virtual admission by Pirovolos that, contrary to his assertion, he had in fact possessed a gun in violation of the Act at his restaurant on another occasion. *See United States v. Craven*, 478 F.2d 1329, 1333–34 (6th Cir. 1973) (constructive possession of firearm shown by evidence that defendant knowingly had power and intention to exercise dominion and control of firearm, either directly or through others); *see also United States v. Laroche*, 723 F.2d 1541, 1542–44 (11th Cir.1984) (section 1202(a)(1) conviction sustained despite testimony that defendant's brother was actual owner of guns). The government's question regarding the discovery of a .25 caliber pistol at the restaurant on June 20, 1983 also concerned an incident similar enough to the matter at issue to be relevant here. Additionally, both of these incidents occurred within a few years of Pirovolos's arrest in this case, and well after his criminal record disqualified him from legally possessing weapons. They were therefore also close enough in time to be relevant to the offense charged.

Third, the evidence here was clear and convincing. Pirovolos himself admitted the presence of another gun at the restaurant and nothing contradicted his testimony.

Finally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Here, the probative value of the evidence was high. The presence of similar weapons in the restaurant casts doubt on Pirovolos's self-defense claim and bolsters the government's theory that Pirovolos routinely kept a gun in the restaurant. In particular, Pirovolos's admission that he knew about and had access to the .32 caliber pistol found after his arrest in this case strongly suggests that the government's theory was precisely correct. In contrast, the evidence in this case was not strongly prejudicial. The government introduced no evidence that Pirovolos had been arrested or charged with any crime following either incident, nor did the prosecutors imply that the presence of the other weapons branded Pirovolos as inherently dangerous or of bad character. In today's dangerous world, mere possession of a weapon, even contrary to law, does not seem likely to inflame the passions of a jury or to derogate the character of the accused substantially.

In conclusion, we find no abuse of discretion in the trial judge's allowance of the cross-examination and his admission of Pirovolos's testimony regarding the May 11, 1986 discovery of another gun at Louie's Little Derby Restaurant. Admission of "other bad acts" evidence under Rule 404(b) invariably involves delicate balancing of probative value and prejudice, but we see no indication that the trial judge here failed in that task. Under our *Shackleford* guidelines, the government's questions regarding the presence of other weapons at the restaurant were properly allowed and Pirovolos's answers were properly admitted into evidence. *See Shackleford*, 738 F.2d at 779.

## II. *Prosecutorial Misconduct*

Two prosecutors represented the government in this case. One delivered the government's closing argument and the other delivered the rebuttal. We will address their arguments separately.

### A. The Closing Argument

■ Pirovolos's claims of prosecutorial misconduct during the government's clos-

ing argument may be disposed of quickly. The comments of the prosecutor who delivered the closing argument were entirely proper, given that the prosecutors believed in good faith that the *Davis* decision required proof of three prior convictions. During the closing argument, the prosecutor simply reiterated that Pirovolos had been indicted for possession of a weapon by a three-time armed robber or burglar, that the prior convictions were a necessary element of the crime charged, and that Pirovolos did not challenge the prior convictions.[7] The prosecutor did not venture beyond the proof she understood to be required by *Davis*, and Pirovolos did not object to her argument. Although, as we discussed above, the *Davis* holding subsequently has been repudiated, the prosecutor did not use the prior convictions for any purpose but to demonstrate that the government had met its burden of proof under the *Davis* approach. Whatever error lay in that approach, we have already discussed. In essence, the prosecutor argued merely that the government had proven its case. We find no misconduct in that argument.[8]

## B. The Rebuttal Argument

■ The government's rebuttal argument is more problematic. Early in his rebuttal, the prosecutor attempted to rehabilitate the credibility of Katz and Bauer by comparing them to Pirovolos. "You can look at Mr. Pirovolos," argued the prosecutor, "and time and time again he gets in trouble with the law, like he did in this case." This statement could be understood by the jury in only two ways. First, the jury may have taken the statement as an attack on Pirovolos's credibility. However, even though the convictions were admitted to prove that Pirovolos was a convicted felon, the government conceded before trial that they were unavailable for impeachment because they were more than ten years old. *See* Fed.R.Evid. 609. Second, the jury could have taken the statement as an argument that Pirovolos was guilty because he had been in trouble before. But a "propensity" argument is proper only in carefully circumscribed situations, none of which arose here. *See* Fed.R.Evid. 404(a). Thus, under either construction of the

---

7. The relevant portions of the government's closing argument are as follows.

> The defendant in this case is charged with possession of a .32–caliber revolver, after being previously convicted of three armed robberies. You will have a copy of the Indictment in this case, it is a one-page Indictment. It describes the armed robbery he is convicted of and describes the revolver and it tells you that this crime, I'm sorry, it informs you that this crime was committed on or about July 21, 1985.

Tr., Nov. 18, 1986, at 116.

> The Court will instruct you that the Government must prove four elements in this case beyond a reasonable doubt. They are as follows, first is that defendant had been previously convicted of the three felonies listed in the Indictment.

*Id.* at 117.

> Well, you recall that on the stand the defendant admitted that he committed the three crimes charged in those—actually the three armed robberies charged in this case.
>
> Simply there is no dispute about the first element, which is that he was convicted of three armed robberies.

*Id.* at 118.

8. Although Pirovolos did not object during the closing argument, he has not waived the issue for appeal. Pirovolos already had debated vig-

orously the admissibility of the prior convictions before trial and had objected to the prosecutor's questioning regarding the convictions during the trial. In response, the trial judge ruled that the convictions would be admitted as "substantive evidence" under the *Davis* approach.

> The general rule requiring counsel to make clear to the trial court what action they wish taken should not be applied in a ritualistic fashion. If the problem has been brought to the attention of the court, and the court has indicated in no uncertain terms what its views are, to require an objection would exalt form over substance.

C. Wright & A. Miller, *Federal Practice & Procedure*, § 842 at 289–90 (1982); *see also, e.g., United States v. Morgan*, 581 F.2d 933 (D.C.Cir.1978) (issue preserved despite lack of formal objection where counsel made desired action clear to trial judge); *United States v. Hopkins*, 433 F.2d 1041 (5th Cir.1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550 (1971) (pretrial motion to suppress sufficient to preserve issue); *Evalt v. United States*, 359 F.2d 534 (9th Cir. 1966) (where counsel objected to testimony of one witness, no further objection required to similar testimony of second witness). Because both Pirovolos's position and the trial judge's ruling were clear, Pirovolos preserved the issue sufficiently for review.

statement, the argument was improper. *See, e.g., United States v. Vargas*, 583 F.2d 380, 387 (7th Cir.1978) (over-emphasis on past crimes impermissible); *United States v. Dow*, 457 F.2d 246, 250 (7th Cir.1972) (where evidence of other crimes properly admitted for one purpose, improper to use for another purpose). Curiously, the trial court overruled Pirovolos's objection.

Next, the prosecutor alleged that the gun Pirovolos used in the parking lot incident was "a hot gun." He surmised that Pirovolos "probably went out and bought it off the street." However, Pirovolos was charged only with possession of a gun; its source was irrelevant. In this context, the jury must have taken the prosecutor's statement to infer that Pirovolos was guilty of buying stolen property or of associating with thieves. Any such inference bore no relation to the issue before the jury. The record before us thus reveals that the prosecutor had no good reason to accuse Pirovolos of purchasing a stolen gun. This argument, too, was obviously improper. *See United States v. Jordan*, 722 F.2d 353, 357 (7th Cir.1983) (prosecutor's reference to prior bad acts improper); *United States v. Miller*, 508 F.2d 444, 448–49 (7th Cir.1974) (generally improper to imply defendant's guilt in uncharged crimes). The court sustained Pirovolos's objection on this point, but failed to instruct the jury to disregard the statement.

█ Finally, the prosecutor asked a series of questions regarding what might have happened during the parking lot incident had the facts been different: might Pirovolos have killed an attendant at the gas station, or a child at the day care center? The trial judge allowed the prosecutor to pursue this argument at first, but then sustained a defense objection, calling the argument "hypothetical." Once again, however, he failed to admonish the jury to ignore the argument. This argument was also improper, although less egregious than the earlier comments. A prosecutor may impress upon the jury the seriousness of the crime charged; however, examples used in making the point must be general in nature and must be fairly supported by the evidence before the jury. Nothing in this record reveals that Pirovolos endangered anyone other than the repossessors. Specific and unsupported hypothetical scenarios may needlessly arouse the emotions of the jury while bearing only a tenuous connection with the issue at hand. Prosecutors should avoid them. *United States v. Dominguez*, 835 F.2d 694, 700–01 (7th Cir.1987); *see also United States v. Zylstra*, 713 F.2d 1332, 1340 (7th Cir.1983).

Having concluded that the government's rebuttal argument was improper, we again must weigh the effect of the error. Two standards may apply. First, prosecutorial misconduct may be so serious that it poisons the entire atmosphere of the trial. If so, the error violates the defendant's right to due process. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986). Like other errors of constitutional magnitude, such extreme prosecutorial misconduct calls for reversal unless the government can demonstrate that the error was harmless beyond reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705 (1967). We apply the constitutional error standard in reviewing both federal and state convictions. *See United States ex rel. Miller v. Greer*, 789 F.2d 438, 444 (7th Cir.1986) (en banc) (unitary standard for constitutional error). A second, lower standard applies only to the review of federal trials. Under that standard, we will reverse a conviction if the defendant can show that trial errors of less than constitutional dimensions may have had a "substantial influence" on the result of the trial. *Kotteakos*, 328 U.S. at 765, 66 S.Ct. at 1248 (interpreting "harmless error statute," current version at 28 U.S.C. § 2111 (1983)). Under the *Kotteakos* standard, we will take notice of errors less serious than those to which the *Chapman* standard applies, but the government's burden in showing such errors harmless is also less onerous. *See, e.g., United States v. Lane*, 474 U.S. 438, 446 n. 9, 106 S.Ct. 725, 730 n. 9, 88 L.Ed.2d 814 (1986) (comparing *Chapman* standard to *Kotteakos* standard); *Greer*, 789 F.2d at 443–44 (comparing standards).

We first address the issue of constitutional error, drawing guidance from the Supreme Court's recent decision in *Darden*, 477 U.S. 168, 106 S.Ct. 2464. In that case, the Court discussed several criteria that may be helpful in our inquiry. They include: (1) the nature and seriousness of the prosecutorial misconduct, (2) whether the prosecutors' statements were invited by impermissible conduct by defense counsel, (3) whether the trial court instructed the jury to disregard the statements, (4) whether the defense was able to counter the improper arguments through rebuttal, and (5) the weight of the evidence against the defendant. *Id.* at 181–83, 106 S.Ct. at 2472–73. Like the Court in *Darden*, we do not find that the prosecutor's comments in rebuttal " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.* at 181, 106 S.Ct. at 2472 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).

Under the *Darden* approach, some facts weigh in Pirovolos's favor. First, the prosecutor's statements here constituted serious misconduct.[9] The prosecutor's comment regarding Pirovolos's prior convictions either constituted an impermissible propensity argument or was an attempt to impeach Pirovolos despite the government's agreement that the convictions were unavailable for that purpose. In either case, the comment was improper and compounded the effect of the trial judge's earlier error in adopting the *Davis* view of section 1202. As a result, not only did the trial judge err in allowing the prior convictions to reach the jury, but the prosecutor aggravated that error by using the convictions for a purpose other than the one for which they were admitted. Misuse of evidence of a defendant's other crimes is particularly prejudicial, and even more so

where the evidence was admitted erroneously. *Vargas*, 583 F.2d at 387; *see also Dow*, 457 F.2d at 250. The "hot gun" comment was similarly inappropriate. Any implication that a criminal defendant is guilty of uncharged offenses unfairly encourages the jury to find the defendant guilty because of his or her bad character, rather than because the evidence warrants a guilty verdict. *Miller*, 508 F.2d at 448–49. Furthermore, the comments were not invited by prior misconduct by the defense attorney. While the government argues that its comments were invited by the defense counsel's description of Katz and Bauer as "thugs," the isolated use of that term was insufficient to invite the clearly improper comments proffered by the prosecutor in rebuttal. Here, the response was overkill and out of proportion to the invitation, so the doctrine does not apply. *See United States v. Young*, 470 U.S. 1, 12–13, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985) (invited response doctrine applies only to comments which do "no more than respond substantially in order to 'right the scale' "). Finally, the trial judge did not warn the jury to ignore the offending comments (although he sustained objections to the last two remarks) and defense counsel had no opportunity to counter the improper rebuttal. *See* Fed.R.Crim.P. 29.1 (prosecutor's rebuttal is final closing argument).

Viewing the record as a whole, however, we do not conclude that the prosecutor's comments denied Pirovolos a fair trial. First, as in *Darden*, the prosecutor did not misstate or manipulate the evidence, nor did the rebuttal impinge directly on any specific provision of the Bill of Rights. *Darden*, 477 U.S. at 181–82, 106 S.Ct. at 2472–73. In fact, the comments here were less prejudicial than those held insufficient to justify reversal in *Darden*. *See id.* at 189–92, 106 S.Ct. at 2476–78 (Blackmun, J., dissenting) (describing prosecutor's closing

---

9. Our characterization of the prosecutor's misconduct as "serious" does not automatically require reversal. *Darden*, for example, involved a vicious personal attack on the defendant, so obviously improper that a federal district judge was moved to comment, "Anyone, attempting a text-book illustration of a violation of the Code of Professional Responsibility ... could not possibly improve upon [the prosecutor's final state-

ment.]" *Darden v. Wainwright*, 513 F.Supp. 947, 955 (M.D.Fla.1981). Nonetheless, the Supreme Court found no constitutional error and affirmed the conviction. *Darden*, 477 U.S. 168, 106 S.Ct. 2464; *see also, e.g., United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

argument). Moreover, given that Pirovolos's status as a convicted felon inevitably would have been revealed to the jury, the prejudicial impact of the comment regarding Pirovolos's prior offenses is lessened. Similarly, the parties' stipulation that ownership of the gun used by Pirovolos could not be traced may well have appeared suspicious enough that the "hot gun" comment added little to the evidence already before the jury. Most important, though, the evidence of Pirovolos's guilt was truly overwhelming. Such strong evidence of guilt "eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *Young,* 470 U.S. at 19, 105 S.Ct. at 1048; *see also Darden,* 477 U.S. at 182, 106 S.Ct. at 2472 (overwhelming evidence of guilt a factor in affirming conviction despite serious prosecutorial misconduct); *Berger v. United States,* 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (overwhelming evidence of guilt justified affirming verdict even in the face of highly improper conduct by prosecutor). Pirovolos's contention that he acted in self-defense was supported only by his own testimony and was contradicted by six eyewitnesses as well as physical evidence. Moreover, Pirovolos's own testimony that he was only trying to help the police and his admission of the presence of another gun at the restaurant seriously weaken his self-defense argument. Like the Court in *Darden,* therefore, we find that prosecutorial misconduct did not deprive the defendant of a fundamentally fair trial. Because we do not find constitutional error, we need not ask whether the error was harmless. *Darden,* 477 U.S. at 183–84 n. 15, 106 S.Ct. at 2473–74 n. 15.[10]

Balancing the nature of the errors in this trial against the overwhelming evidence of Pirovolos's guilt, we also do not find that Pirovolos has borne the burden of demonstrating that any error here may have substantially influenced the jury's verdict. *See Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248. As we said above, we see little

chance that a rational jury would have believed Pirovolos's story, even if the trial were stripped of all error. Viewing the record as a whole, we are confident that the errors we have reviewed here had little or no effect on the jury's deliberations. We therefore decline to reverse Pirovolos's conviction under the *Kotteakos* approach. *Id.*

In closing, we emphasize that we do not reverse convictions to punish prosecutors. "It is better to punish the prosecutor directly; there is no lack of sanctions for a lawyer's misconduct, of which improper advocacy is a well-recognized species." *United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir.1986); *see also Young,* 470 U.S. at 7–11, 105 S.Ct. at 1042–44. When the seriousness of prosecutorial misconduct and the weakness of evidence of guilt cause us to question a trial's fairness, we will not hesitate to reverse the resulting conviction and order a new trial. *See, e.g., Mauricio v. Duckworth,* 840 F.2d 454 (7th Cir.1988); *Williams v. Lane,* 826 F.2d 654 (7th Cir.1987); *United States v. Shue,* 766 F.2d 1122 (7th Cir.1985). Here, however, "[t]he evidence against the appellant was overwhelming; it included substantial eyewitness evidence ... as well as physical evidence.... It is almost inconceivable that if the prosecutor had refrained from making the remarks that he did, the appellant[ ] would have been acquitted." *Mazzone,* 782 F.2d at 764. As the Supreme Court often has reminded us, the Constitution guarantees a fair trial, not a perfect one. *See, e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980–81, 76 L.Ed.2d 96 (1983); *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). Accordingly, the jury's verdict is

AFFIRMED.

---

**10.** Because we examine very similar factors in the "constitutional error" and "harmless error" phases of deciding whether prosecutorial misconduct compromised the fairness of a trial, we have often collapsed the two into a single inquiry: Did the defendant receive a fair trial? *See United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir.1986); *see also Shepard v. Lane,* 818 F.2d 615, 621–22 (7th Cir.1987).