UNITED STATES of America,
Plaintiff–Appellee,

v.

Darrell I. LOWE, Defendant–Appellant.

No. 88–1289.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1988.
Decided Oct. 17, 1988.

Douglas Scovil, Rock Island, Ill., for defendant-appellant.

Bradley W. Murphy, Asst. U.S. Atty., J. William Roberts, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUDAHY, FLAUM and MANION, Circuit Judges.

FLAUM, Circuit Judge.

A grand jury indicted Darrell Lowe for being a convicted felon in possession of a firearm which had traveled in interstate commerce. 18 U.S.C. § 922(g). The one-count indictment also alleged that Lowe had three previous state court convictions for violent felonies in violation of 18 U.S.C. § 924(e). Lowe appeals his subsequent conviction after a jury trial, claiming that the indictment failed to charge an offense under § 922(g). He also argues that the indictment was constructively amended by the jury instructions which impermissibly broadened the original charge. For the reasons stated below, Lowe's conviction is affirmed.

I.

On the evening of January 4, 1987, the police for Rock Island, Illinois were called to the Katydid Tavern to break up a bar fight. The officers dispatched to the tavern were informed that one of the disputants might be armed with a handgun. When the police arrived, they observed Lowe arguing with another patron. After breaking up the fray, the officers frisked Lowe and found a .22 caliber revolver stuck in his belt. Lowe was arrested and ultimately charged on April 8, 1987 in a one-count indictment which alleged that he:

did knowingly possess a firearm which had previously traveled in interstate commerce, to wit: a Liberty .22 caliber revolver with an obliterated serial number, the defendant having been previously convicted three times under the laws of the State of Illinois for felony crimes of violence.

In violation of United States Code, Title 18, Section 924(e).

Lowe moved to dismiss the indictment on numerous grounds, including the contention that 18 U.S.C. § 924(e) is a sentence-enhancement provision for the predicate offense of felony firearm possession in § 922(g) rather than a separate substantive offense.[1] When the trial court denied the motion to dismiss, Lowe stipulated to the fact that he had three prior state court convictions for the purposes of § 924(e), and successfully moved *in limine* to prevent the government or any of its witnesses from mentioning the felonies at trial.

At trial, the government sought to prove the interstate character of the .22 caliber revolver through the testimony of Richard Craze, a firearms enforcement officer from the Treasury Department's Bureau of Alcohol, Tobacco and Firearms. The government qualified Craze as an expert on firearms identification and classification, and he testified that the gun in Lowe's possession was manufactured in West Germany and was imported into the United States by the Liberty Arms Corporation located in Montrose, California. Over the objection of defendant, Craze also testified that in his opinion, the location of the manufacturer and importer of the firearm indicated that it had traveled in interstate commerce.

At the conclusion of the trial, the jury was given the following instructions, again over Lowe's objection, on the commerce nexus necessary for a conviction under § 922(g):

The term "interstate" or "foreign commerce" includes commerce between any place in the state and any place outside of that state or any possession within the possessions of the United States or the District of Columbia, but such term does not include commerce between places within the same state but through any place outside of the state.

\*    \*    \*    \*    \*    \*

---

**1.** In his motion to dismiss, Lowe specifically stated that:

The indictment does not charge any violation of the laws of the United States of America as to the defendant, Darrell I. Lowe, in that Section 924(e) does not contain a substantive offense of which a person can be found guilty; but rather is a sentence-enhancement provision and a person cannot be deemed guilty of having violated a provision relating to sentencing.

"Commerce" means travel, trade, traffic, commerce, transportation or communication among the several states.

If you do not find beyond a reasonable doubt that the firearm had traveled in interstate commerce, then the government has not met its burden of proof on this issue, and you must find the defendant not guilty.

The government may meet its burden of proving that the firearm had previously traveled in interstate commerce if it is demonstrated that the firearm possessed by a convicted felon had previously traveled from one state to another.

The jury returned a guilty verdict and the trial court entered judgment on February 4, 1988.[2] Lowe moved to arrest the judgment and for a new trial, again claiming that it was improper to charge a violation of 18 U.S.C. § 924(e) as if it were a substantive offense.[3] The court denied these motions and subsequently sentenced Lowe to a term of fifteen years without parole pursuant to the mandatory provisions of § 924(e)(1). Thereafter, Lowe timely filed a notice of appeal.

## II.

Lowe's initial claim is that the indictment failed to state an offense under 18 U.S.C. § 922(g). Specifically, Lowe contends that the charge in the indictment that he possessed "a firearm which had previously traveled in interstate commerce," is not the same as the offense of possessing a firearm "in or affecting commerce," the language employed in § 922(g).[4] He also ar-

gues that for the purposes of § 922(g), "commerce" is a separate and distinct concept from "interstate commerce." As part of this claim, Lowe adds that the government failed to establish the necessary jurisdictional nexus between commerce and the firearm in his possession. Based upon our review of the indictment and the evidence adduced at trial, we conclude that each of these contentions is without merit.

■■■ Lowe's initial argument is, in all respects, a challenge to the technical sufficiency of the indictment.[5] To evaluate this claim, we must read the indictment as a whole to determine whether all of the elements of the charged offense are alleged. This requirement is designed to ensure that the accused is adequately apprised of the charges so that he or she can prepare a proper defense. *United States v. Olson,* 846 F.2d 1103, 1115 (7th Cir.1988). In determining whether the essential elements of the offense are sufficiently stated, however, it is not necessary that any particular words or phrases be used, *United States v. Garcia–Geronimo,* 663 F.2d 738, 742 (7th Cir.1981) (citing *United States v. Weatherspoon,* 581 F.2d 595, 600 (7th Cir.1978)), nor is it necessary that the indictment track the exact language of the statute as long as each element of the offense is alleged in a form which substantially states it. *Weatherspoon,* 581 F.2d at 600 (citing *Hagner v. United States,* 285 U.S. 427, 433, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932)). Under the foregoing principles, we are persuaded that a reasonable construction of

**2.** The district court's Order of Judgment stated that defendant was convicted of the offense of being a "[f]elon in possession of a firearm (armed career criminal) in violation of Title 18, U.S. Code, Section 924(e) as charged in the indictment herein."

**3.** Lowe argued, among other things, that the indictment did not properly charge an offense and that he was unduly prejudiced as a result of the § 924(e) charge because the jury was advised of his three prior felony convictions.

**4.** The pertinent portions of 18 U.S.C. § 922(g) provide:

It shall be unlawful for any person—
(1) who has been convicted in court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in

interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**5.** While an indictment must also be sufficiently clear to enable the defendant to plead that an acquittal or conviction stand to bar subsequent prosecution, *United States v. Garcia–Geronimo,* 663 F.2d 738, 743 (7th Cir.1981) (citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1973)), Lowe does not purport to challenge the indictment on these grounds. In any event, our conclusion that the indictment properly charged an offense under § 922(g) disposes of any such concerns.

the charging language—that Lowe possessed a firearm "which had previously traveled in interstate commerce"—substantially stated the essential element of possession "in or affecting commerce." 18 U.S.C. § 922(g).

This conclusion, which is bottomed on a simple reading of both the indictment and statute, is fortified by the Supreme Court's interpretation of the commerce element of 18 U.S.C.App. § 1202(a), the statutory forerunner of § 922(g). *See United States v. Gillies,* 851 F.2d 492, 494–95 (1st Cir.1988). In *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Court began its interpretation of the "in or affecting commerce" phrase of § 1202(a) by reaffirming that Congress is aware of the "distinction between legislation limited to activities 'in commerce' and an assertion of its full range of Commerce Clause powers so as to cover all activity substantially affecting interstate commerce." *Id.* at 571, 97 S.Ct. at 1967. The Court went on to review the legislative history of § 1202(a) and concluded that Congress sought to reach the possession of firearms broadly,[6] especially since it could find "no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* at 575, 97 S.Ct. at 1969. *See also United States v. Karlin,* 852 F.2d 968, 974 (7th Cir.1988). The Court's interpretation of the statute's breadth makes it clear that for the purposes of § 922(g), a charge that a firearm "previously traveled in interstate commerce" sufficiently states the commerce element of the offense. *Gillies,* 851 F.2d at 496; *United States v. Haley,* 581 F.2d 723, 726 & n. 4 (8th Cir.1978). This conclusion also renders meritless Lowe's contention that "commerce" is a separate and distinct concept from "interstate commerce." We therefore conclude that the indictment as a whole sufficiently stated

the elements of the firearms possession charge.

■■■ Similarly, we find Lowe's sufficiency of the evidence claim on the interstate commerce nexus to be without merit. It is firmly established that under § 922(g), proof of a gun's manufacture outside of the state in which it was allegedly possessed is sufficient to support the factual finding that the firearm was "in or affecting commerce." *United States v. Gourley,* 835 F.2d 249, 251 (10th Cir.1987) (proof of manufacture in Spain sufficient); *United States v. Clawson,* 831 F.2d 909, 913 (9th Cir.1987) (proof of manufacture in Germany sufficient); *United States v. Gregg,* 803 F.2d 568, 571 (8th Cir.1986) (proof of manufacture in another state sufficient). In the present case, the government's firearms expert not only testified that the gun in Lowe's possession was manufactured in Germany and imported through California, he stated that, in his opinion, the firearm had traveled in both foreign and interstate commerce. We conclude that Lowe has failed to carry the "heavy burden" that must be shouldered under a sufficiency of the evidence claim. *United States v. Bruun,* 809 F.2d 397, 408 (7th Cir.1987) (the verdict must stand unless the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt).

### III.

Lowe's second claim on appeal is that the indictment was effectively amended by the trial court's jury instructions on the commerce nexus required for a conviction under § 922(g). Lowe relies heavily upon *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), for support of this contention. In its brief, the government seeks to distinguish *Stirone* by arguing that "only one violation of the Armed Career Criminal Act [18 U.S.C. § 924(e)(1)]

---

**6.** For example, the Court made particular reference to Congress' findings and declarations preceding the statute:

> Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons ... constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce....

*Scarborough,* 431 U.S. at 571 n. 10, 97 S.Ct. at 1967 n. 10 (quoting 18 U.S.C. App. § 1201).

was alleged and proven." Appellee's Brief at 12. In his reply brief, Lowe responds to the government's contention by reasserting his argument made to the district court that it was error to indict him under § 924(e)(1) because it is a sentence-enhancement provision rather than a substantive offense. Appellant's Reply Brief at 2. This latter contention raises a more substantive issue [7] that has generated substantial disagreement among the federal circuits. Nevertheless, it is incumbent upon this court to first consider whether the matter is properly before us in this appeal, or whether the argument was waived when Lowe did not raise it in his main brief.

As a general rule, this court will not consider issues raised for the first time in a reply brief. *Taylor v. Peabody Coal Co.*, 838 F.2d 227, 229 (7th Cir.1988); *Shlay v. Montgomery*, 802 F.2d 918, 922 n. 2 (7th Cir.1986). In reaffirming this principle, we have referred counsel to the twin directives in Rule 28 of the Federal Rules of Appellate Procedure (appellant's initial brief must include a statement of the issues) and Seventh Circuit Rule 28(e) (the reply brief shall be limited to matter in reply). *In Re Bear*, 789 F.2d 577, 579 (7th Cir.1986). However, we have also recognized that these two rules give rise to an exception which we will now more appropriately label as a corollary. "[W]here an appellee raises an argument not addressed by the appellant in its opening brief, the appellant may

reply." *Bennett v. Tucker*, 827 F.2d 63, 69 n. 2 (7th Cir.1987) (citing *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 359 (7th Cir.1987) (opinion of Posner, J.)). This corollary is largely aimed at securing a level of fairness that might otherwise be lost under a one-sided application of the waiver rule. The invocation of the corollary in the present case is therefore fitting to the extent that the government sought to rely on an issue which Lowe fully preserved by his pre-trial and post-trial motions, yet neglected or chose not to argue on appeal. We also note that because the issue involves a matter of statutory interpretation, concerns about our limited role as an appellate court do not counsel against addressing the matter. We thus proceed to address the substantive nature of 18 U.S.C. § 924(e).

At oral argument, the government stated that its position is in fact that § 924(e) is a sentence-enhancement provision rather than a substantive offense.[8] This is a position it has stated with some consistency. *See, e.g., United States v. Rush*, 840 F.2d 574, 576 (8th Cir.1988); *United States v. Jackson*, 824 F.2d 21, 23 (D.C.Cir.1987), *cert. denied*, ___ U.S. ___, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988); *United States v. Davis*, 801 F.2d 754, 756 (5th Cir.1986). What is not consistent with this position is the government's apparent practice of indicting felons under § 924(e) as if it were a substantive offense. *See, e.g., Gillies,*

---

**7.** Lowe's claim relative to the trial court's instructions on the commerce element of § 922(g) is that the inclusion of references to "foreign commerce" constructively amended the indictment by adding to the charges against him. As the Eleventh Circuit has recently stated, "a constructive amendment to the indictment occurs where the jury instructions "so modif[y] the elements of the offense charged that the defendant may have been convicted on a ground not alleged in the indictment." *United States v. Peel*, 837 F.2d 975, 979 (11th Cir.1988). Under this test, we fail to see how the inclusion of the term "foreign commerce" in the instructions constitutes a constructive amendment to the indictment since the term was defined synonymously with "interstate commerce," and the limited references to "foreign commerce" were made only as part of the direction to the jury that it must find that the firearm had "traveled from one state to another." We conclude, after reading the instructions as a whole, *United*

*States v. Machi*, 811 F.2d 991, 995 (7th Cir.1987), that the references to "foreign commerce" did not modify the elements of § 922(g).

**8.** In its entirety, 18 U.S.C. § 924(e)(1) provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such persons with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

851 F.2d at 496; *United States v. Pirovolos*, 844 F.2d 415 (7th Cir.1988).

Admittedly, the federal courts have not provided the government with sufficient guidance on this point since the circuits have rendered conflicting opinions on the substantive nature of § 924(e). Typifying the extent of the conflict is the Sixth Circuit's recent reversal of its conclusion that § 924(e) establishes a separate federal offense. *United States v. Brewer*, 853 F.2d 1319 (6th Cir.1988), *vacating and setting aside after rehearing*, 841 F.2d 667, 668–69 (6th Cir.). As for the other circuits, the Third, Fourth, Eighth, Ninth, Tenth and District of Columbia Circuits have all concluded that § 924 is a sentence-enhancement provision, but in some instances, have generated forceful dissents in doing so. *United States v. Gregg*, 803 F.2d 568, 570 (10th Cir.1986), *cert. denied*, 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987); *United States v. Hawkins*, 811 F.2d 210, 220 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Jackson*, 824 F.2d 21, 22–26 (D.C. Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 506, 98 L.Ed.2d 665 (1988); *United States v. West*, 826 F.2d 909, 911 (9th Cir. 1987); *United States v. Blannon*, 836 F.2d 843, 844–45 (4th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). The Eighth Circuit reached its conclusion after considering the matter *en banc*. *United States v. Rush*, 840 F.2d 574, 576–78 (8th Cir.1988) (en banc). Finally, subsequent to the oral argument in the present case, this circuit held that § 924(e) is a sentence-enhancement provision. *United States v. Karlin*, 852 F.2d at 972 (citing *Pirovolos*, 844 F.2d at 420–21); *United States v. Dickerson*, 857 F.2d 414, 416–18 (7th Cir.1988). On the other hand,

the Fifth Circuit has concluded that § 924(e) creates a separate federal offense. *United States v. Davis*, 801 F.2d 754, 755–56 (5th Cir.1986).

Our opinion in *Dickerson* emphasized the double jeopardy problems arising from a concurrent sentence under both § 922(g) and § 924(e). Because the present case implicates the contradiction and possible confusion arising from the government's assertion that § 924(e) is a sentence-enhancement provision and its practice of indicting defendants as if the statute creates a separate offense, we respectfully underscore a number of the points advanced in *Dickerson* concerning the substantive nature of § 924(e).

In interpreting the reach of a criminal statute, the purpose of this court's review is to determine the intent of Congress as reflected in the language, structure, and legislative history of the statute. *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). If these manifestations of Congressional intent are ambiguous, leaving us unable to define the ambit of the criminal statute, the Rule of Lenity requires that we strictly construe the statute in favor of the defendant. *United States v. Turkette*, 452 U.S. 576, 587, n. 10, 101 S.Ct. 2524, 2531, n. 10, 69 L.Ed.2d 246 (1981). As explained by the Supreme Court, the Rule of Lenity comes into play only "when choice has to be made between two readings of what conduct Congress has made a crime." *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). It requires that Congress speak in language that is clear and definite before a court may choose the harsher of the alternatives presented.[9] *Id.* Because of our conclusion

---

**9.** Stated in these terms, the Rule of Lenity conveniently frames an aspect of the tension inherent in the two views of the substantive nature of § 924(e). The dissenting jurists who have concluded that the statute creates a separate offense have stressed that to hold otherwise would allow the accused to suffer a significantly larger penalty without "the full panoply" of constitutional protections afforded a defendant. *Hawkins*, 811 F.2d at 230 (Rosenn, J., concurring in part dissenting in part). *See also Rush*, 840 F.2d at 580 (Gibson, J., dissenting). In contrast, a

number of the courts that have held that § 924(e) is a sentence-enhancement provision have highlighted the prejudice inherent in stating the sentencing facts of three felony convictions in the indictment in accordance with the Fifth Amendment, presenting the historical facts surrounding the convictions to jury for its determination as mandated by the Sixth Amendment, and requiring that such convictions be established beyond a reasonable doubt under the strictures of the due process clause. *Jackson*,

that the intent of Congress as to the nature of § 924(e) is unambiguous, we need not employ this doctrine of last resort. *Russello v. United States*, 464 U.S. 16, 29, 104 S.Ct. 296, 303, 78 L.Ed.2d 17 (1983).

■ Much of the conflict over the nature of the Armed Career Criminal Act of 1984 ("ACCA"), originally codified at 18 U.S.C. App. § 1201, arose prior to Congress' recent repeal and reenactment of its provisions in §§ 922(g) and 924(e)(1). Firearms Owners Protection Act of 1986, Pub.L. No. 99–308, 100 Stat. 456 (1986). *See* H.R.Rep. No. 99–945, *reprinted in* 1986 U.S. Code Cong. & Admin. News 1327, 1349–52. By recodifying the ACCA, Congress has settled much of the disagreement over the nature of § 924(e) by restructuring the Act to reflect what the Fifth Circuit has called "the common indicia of sentence-enhancement provisions." *Davis*, 801 F.2d at 756 (citing *Garrett*, 471 U.S. at 782, 105 S.Ct. at 2413). The *Davis* court surmised that such "common indicia" include a title indicating that the statute is a sentence-enhancement provision, an explicit reference in the statute to the necessary conviction under the predicate provision, a penalty derived as a multiplier of other offenses, and procedures for a sentencing hearing. *Davis*, 801 F.2d at 756.

In its present form, § 924(e) contains a number of these characteristics. For example, the first half of § 1202(a), which makes it unlawful for a class of prohibited persons, such as previously convicted felons, to ship, transport, or possess a firearm, was recodified under the "Unlawful Acts" subtitle of § 922(g)(1). On the other hand, the second half of § 1202(a)(1), the mandatory sentencing provisions here at issue, were moved to the "Penalties" subtitle of 18 U.S.C. § 924. *Dickerson*, at 416–17. Additionally, Congress changed the language of § 924(e) so that it now specifically refers to "the case of a person who violates Section 922(g) of this title and has three previous convictions by any court referred to in Section 922(g)(1) of this title for

a violent felony or a serious drug offense, or both...." The statute then goes on to mandate the sentence of a fine of not more than $25,000 and imprisonment without eligibility for parole for "not less than fifteen years...." 18 U.S.C. § 924(e)(1).

From this structure, it is clear that the mandatory sentencing provision of § 924(e) is applicable only after the defendant has been convicted of one of the predicate offenses enumerated in § 922(g). The requirement that a defendant have three prior convictions for serious drug offenses or violent felonies as defined in § 922(g) causes the statute to closely resemble a recidivist provision. *Dickerson*, at 416; *Jackson*, 824 F.2d at 24. In fact, the only perceptible difference between § 924(e) and a more traditional recidivist statute is Congress' conclusion that a certain class of repeat felons should be subject to an enhanced sentence when they commit the prohibited act of shipping, transporting, or possessing a firearm, rather than the same underlying offense or offenses. Significantly, the legislative history of the ACCA reveals that this difference was intended and is a function of Congress' aim of subjecting "career criminals"—that small number of repeat offenders responsible for an inordinate percentage of the nation's 25 million crimes of theft or violence—to federal prosecution without radically expanding federal jurisdiction over common law crimes. *See, e.g.,* 130 Cong.Rec.H. 10550 (daily ed. Oct. 1, 1984) (Statements of Rep. Hughes and Rep. Sawyer). In light of this intent, we do not perceive the structural variation in § 924(e) to be a difference in kind from a statute enhancing the penalty for an offender who repeats the same offense. *United States v. Neary*, 552 F.2d 1184, 1194 (7th Cir.), *cert. denied*, 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977) (under a recidivist statute, the determination of prior convictions is independent of the conviction for the substantive offense and subjects defendant to increased penalty). Finally, it is instructive to note that under traditional sentencing procedures,

824 F.2d at 25. Since we are convinced that the intent of Congress is clear as to the nature of § 924(e), however, we need not decide which of

these two views is harsher for the purpose of applying the Rule of Lenity.

proof of a defendant's prior felonies is the type of individual background information considered by a judge in sentencing a defendant. *See Government of Virgin Islands v. Castillo,* 550 F.2d 850, 853 n. 5 (3d Cir.1977). It is not the type of factual determination for which our juries are best suited or one they are ordinarily asked to make. Without a more definitive direction from Congress, we are unwilling to presume such a radical departure from these traditional roles.

As it is presently codified then, § 924(e) contains a sufficient number of the "common indicia" of a sentence-enhancement provision to persuade us that Congress intended to create just that. *Contra Davis,* 801 F.2d at 756; *Rush,* 840 F.2d at 577 (Gibson, J., dissenting); *Hawkins,* 811 F.2d at 224 (Rosenn, J., concurring in part and dissenting in part). In making this observation, however, we do not presume, as the Fifth Circuit seemingly has, that all sentence-enhancement provisions will necessarily have the exact same structure and characteristics. *Compare* 18 U.S.C. § 3573, Increased Sentence For Dangerous Special Offender, *with* 21 U.S.C. § 848, Continuing Criminal Enterprise, *and* 21 U.S.C. § 849, Dangerous Special Drug Offender Sentencing. In that regard, Congress' failure to establish a separate sentencing hearing procedure in § 924(e) for the consideration of a defendant's prior felony convictions is not dispositive of whether the statute is a sentence-enhancement provision. Although Congress' oversight on this score may make the ACCA less comprehensive as a sentence-enhancement provision, the omission does not render the statute a separate offense. *Contra Rush,* 840 F.2d at 579 (Gibson, J., dissenting).

Finally, we must consider the conclusion of the dissenting judges in *Hawkins,* 811 F.2d at 223–25, and *Brewer,* 853 F.2d at 1327–29, that the mandatory sentencing structure of § 924(e) renders it a separate offense under the Supreme Court's reasoning in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *McMillan,* the Court was faced with a constitutional challenge to Pennsylvania's Mandatory Minimum Sentencing Act ("MMSA"). The MMSA required the imposition of a five-year minimum sentence if the trial judge found that the defendant "visibly possessed a firearm" during the commission of one of the felonies enumerated in the statute. The issue pressed by the petitioners was whether the visible possession factor was an element of the offense, thus requiring proof beyond a reasonable doubt under *Mullany v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). A majority of the *McMillan* Court concluded, however, that the visible possession finding was a sentencing factor governed by its subsequent holding in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The Court stressed that in *Patterson,* it had "rejected the claim that whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." *McMillan,* 477 U.S. at 84, 106 S.Ct. at 2416 (quoting *Patterson,* 432 U.S. at 214, 97 S.Ct. at 2329). In reaching its conclusion that *Patterson* governed the case before it, the Supreme Court observed that:

> Petitioner's [sic] claim that visible possession under the Pennsylvania statute is "really" an element of the offense for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—*would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment* ... but it does not ... it [raises the ante for the defendant] only in the way we have previously mentioned, by raising the minimum sentence that may be imposed by the trial court.

*McMillan,* 477 U.S. at 88, 106 S.Ct. at 2418 (emphasis added).

In interpreting § 924(e), the dissenting judges in *Brewer* and *Hawkins* placed considerable stress on a portion of the Court's "greater or additional punishment" statement to "require ... proof beyond a reasonable doubt of a fact that increases the punishment beyond the minimum set by the

legislature for the other elements of the offense." *Brewer*, No. 86–6155, slip op. at 19 (Merritt, J., dissenting). With that point in hand, they concluded that § 924(e) establishes a separate offense because "the prison sentence imposed exceeds the maximum prison sentence permitted for the crime charged in the indictment." *Id. See also Hawkins*, 811 F.2d at 223–24 (Rosenn, J., concurring in part and dissenting in part).

This rather selective reading of *McMillan* has engendered sharp criticism. *See Brewer*, 841 F.2d 667, 676 (Krupansky, J., dissenting), *vacated and set aside after rehearing*, 853 F.2d 1319 (6th Cir.1988) ("majority extrapolates a cannibalized passage from *McMillan* ... which did not even rise to the level of dicta"); *Field v. Sheriff of Wake County, North Carolina*, 831 F.2d 530, 536 (4th Cir.1987) (minimum/maximum analysis "alone did not form a basis of the Court's opinion"). Based upon our understanding of *McMillan*, we also believe that the Court's "greater or additional punishment" analysis was not intended to be the sole test for measuring whether a sentencing factor becomes an element of the offense. The *McMillan* Court made it clear that it was unable to lay down a bright line test for such statutes; the result being that the constitutionality of these statutes will necessarily turn on differences in degree. Furthermore, the Court specifically stated that Pennsylvania's act of taking one factor that has always been considered by sentencing courts to bear on punishment and dictate "the precise weight to be given that factor if the instrumentality is a firearm ... has not transformed against [Pennsylvania's] will a sentencing factor into an element of some hypothetical 'offense.' " *McMillan*, 477 U.S. at 89–90, 106 S.Ct. at 2419. Finally, we believe that the reading of *McMillan* pressed by the dissenting judges in *Brewer* and *Hawkins* does not conform to the Supreme Court's understanding of the dictates of the due process clause:

> *Mullany's* holding, it is argued, is that the State may not permit the blameworthiness of an act or the severity of punishment authorized for its commission to

depend upon the presence or absence of that fact, as the case may be, beyond a reasonable doubt. In our view, the *Mullany* holding should not be so broadly read.

*Patterson*, 432 U.S. at 214, 97 S.Ct. at 2329. *See also McMillan*, 477 U.S. at 84, 106 S.Ct. at 2416.

While it is obvious that § 924(e) links the severity of a defendant's punishment to the type and number of his or her prior convictions, we do not believe that reliance upon such historical facts in this statutory scheme impermissibly transcends the boundaries of the due process clause. Section 924(e) in no way relieves the prosecution of its burden of proving beyond a reasonable doubt all of the elements of the predicate possession offense. The Fifth Circuit's explanation of the operation of a similar recidivist statute is particularly fitting:

> Such statutes are, and have historically been, generally recognized as sentencing statutes, not as separate offense statutes. They plainly involve no legislative attempt to evade constitutional rights. Moreover, they have no relation to the circumstances of the wrongdoing constituting the most recent offense, but rather to something which is wholly unrelated thereto. Further, they do not relate to determining what the accused has done, but rather what the state has previously determined that he has done. And that previous determination must have been a formal, judicial determination of guilt; and hence one as to which the full measure of constitutional protections was available. The scheme of the statutes, therefore, cannot be properly understood as intended or calculated to infringe on the right attending determination of whether the accused has engaged in criminal conduct.

*Buckley v. Butler*, 825 F.2d 895, 903 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988).

The legislative history of the Armed Career Criminal Act lends further support to our conclusion that a common-sense interpretation of the current wording and struc-

ture of § 924(e) reveals Congress' intent to create a sentence-enhancement provision rather than a separate substantive offense. *Dickerson,* at 416. *See also Brewer,* 853 F.2d at 1325; *Rush,* 840 F.2d at 576 n. 6.

In its nascent stages, the ACCA was intended by Congress to create a new federal offense for armed burglary or robbery by a defendant with two or more prior convictions. The very first version of the ACCA was passed by both Houses of Congress in 1982 and submitted to the President as part of a comprehensive seven-part crime package. When the President pocket vetoed this package, the ACCA was reintroduced as S. 52 and H.R. 1627. The Senate Report accompanying its version of the Act made clear that "[t]he bill creates a new Federal crime of carrying a firearm during the commission of a robbery or burglary ..." S.Rep. No. 190, 98th Cong., 1st. Sess. 3 (1983). Similarly, a subsequent House Report echoed that "H.R. 1627 would make it a Federal offense for a defendant to commit any robbery or burglary with a firearm if such defendant had been convicted two or more times previously of a robbery or burglary under either Federal or State laws." H.R.Rep. No. 1073, 98th Cong.2d Sess. 4, *reprinted in* 1984, U.S. Code Cong. & Admin. News p. 3182 at 3664.

As both Houses of Congress considered the ACCA, a number of legislators raised considerable concern over extending federal jurisdiction into matters of state law and prerogative. H.R.Rep. No. 1073 at 4, U.S. Code Cong. & Admin. News, 1984, at 3664 (questions as to the need for federal prosecution of local robberies and burglaries and coordination of such efforts with local District Attorneys notwithstanding career criminal problem). The basic Federalism concerns prompted by S. 52 and H.R. 1627 were answered by Representative Hughes, who offered a substitute bill which linked federal jurisdiction to the interstate commerce character of the firearm used by the defendant. This bill required a federal prosecutor to "show that a firearm has previously traveled in interstate commerce to establish Federal jurisdiction." The House Report goes on to explain that:

> *In "enhancing" this offense [§ 1202(a)] with H.R. 1627–type sanctions, if the defendant has been convicted three times of robbery or burglary, we are "enhancing" an existing Federal crime,* which would alleviate many of the problems associated with H.R. 1627 such as the issue of a local D.A. veto or the difficulties encountered by Federal courts in applying State robbery and burglary laws in Federal prosecutions.

H.R.Rep. No. 1073 at 5, U.S. Code Cong. & Admin. News, 1984, at 3665 (emphasis added). In the floor debates that followed, Representative Hughes clarified his intent in sponsoring the amendment to the bill that ultimately became the ACCA of 1984:

> H.R. 6284 which we have before us is another, and, I believe, useful approach to this problem. This bill would *enhance the sanctions of 18 U.S.C. Section 1202(a) with a 15–year minimum sentence* if the defendant has been convicted three times of felonies for robbery or burglary.

130 Cong.Rec.H. 10550 (daily ed. Oct. 1, 1984) (Statement of Rep. Hughes) (emphasis added). The sentence-enhancement intentions of Representative Hughes were reiterated by Representative Sawyer:

> The proposal before us today is crafted to avoid the federal prosecution of State burglary or robbery charges. *This proposal does not even expand Federal criminal law. H.R. 6248 takes an existing gun possession statute and enhances the penalty* for any violation by a person having been previously convicted three times of armed burglary or robbery.

> H.R. 6248 would apply *the enhanced penalties* of a fine not more than $25,000 or imprisonment of not less than 15 years, or both, in addition to the penalties for the underlying offense. These penalties would be applied to anyone possessing a firearm in violation of section 1202(a) to title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.App. 1202(a)). This person must have three previous convictions for burglary or robbery.

130 Cong.Rec.H. 10550–51 (daily ed. Oct. 1, 1984) (Statement of Rep. Sawyer) (emphasis added). Senator Specter, the Senate sponsor of the ACCA, also highlighted his understanding of the amended bill during the Senate floor debates:

> *This bill would create no new Federal crime.* Under present section 1202(a), possession of a firearm by a convicted felon is already a Federal crime, with a maximum prison sentence of 2 years. *This title would simply provide for a stiffer sentence for career criminals.*

130 Cong.Rec.S. 13080 (daily ed. Oct. 4, 1984) (Statement of Sen. Specter) (emphasis added).

These statements of members of both Houses of Congress reflect an intent to ultimately create in the ACCA a sentence-enhancement provision. In reaching the opposite conclusion, the Fifth Circuit and the dissenting judges in *Hawkins* and *Brewer* overlooked the Federalism concerns raised by certain legislators relative to S. 52 and H.R. 1627, and isolated one conflicting statement in the House Report on the ACCA to support their position.[10] Such an expansive reading of one paragraph of the House Report is too thin a reed to support the view that the ACCA creates a separate federal offense.

■ Having concluded that § 924(e) was intended by Congress to be a sentence-enhancement provision, we turn to Lowe's argument that it was error to indict him

under the statute as if it was a separate offense. Two aspects of the indictment are implicated in this argument. The first is the final line of the indictment alleging that Lowe violated "Section 924(e)." Under Rule 7(c) of the Federal Rules of Criminal Procedure, a miscitation such as the reference to § 924(e) is harmless error and cannot be grounds for dismissing the indictment or reversing the conviction unless the defendant is misled by the erroneous reference and prejudiced thereby. *United States v. Hutcheson,* 312 U.S. 219, 229, 61 S.Ct. 463, 464, 85 L.Ed. 788 (1941); *United States v. Garner,* 529 F.2d 962 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976). It is apparent from the content of Lowe's numerous pretrial motions that the indictment created no such notice problem for him or his counsel.

■ The reference in the indictment to Lowe's three prior felony convictions, however, is significantly more troubling. The danger inherent in submitting evidence of a defendant's prior convictions to a jury needs little explanation. Under Federal Rule of Evidence 404(b), one of the clearest statements of this concern, a trial court must be chary in admitting evidence relating to a defendant's prior criminal conduct unless the evidence is narrowly circumscribed for limited purposes.[11] The rationale behind Rule 404(b) is simple: a jury may be willing to convict a defendant based

---

**10.** Stated in its entirety, the Fifth Circuit's position is that Congress used the term "enhancing" to mean the creation of a new federal crime. In support of this proposition, the *Davis* court relies on a part of the sectional analysis of the House Report on the ACCA, which states:

> Section 2 amends 18 U.S.C.App. § 1202(a) *by adding a new offense* proscribing any felon who has been convicted previously of three felonies for robberies or burglaries (either Federal or State) from receiving, possessing, or transporting in commerce or affecting commerce any firearm.

H.R.Rep. No. 1073, 98th Cong., 2d Sess. at 6 (1984), U.S.Code Cong. & Admin.News 1984, p. 3666 (emphasis added). Although the foregoing statement supports the Fifth Circuit's view, it does not comport with the gist of the entire House Report or many of the other references in the Report to the effect of the ACCA. *See, e.g., id.* at 1, U.S.Code Cong. & Admin.News

1984, p. 3661 (Introduction to report recommending passage of the "bill ... to provide enhanced penalties for certain persons possessing firearms after three previous convictions ..."). Standing alone, the quote relied upon by the Fifth Circuit would seem to be a misstatement. On balance, we believe that it does not offset the numerous direct references to sentence or penalty enhancement which we and the majority of other courts have cited. *Jackson,* 824 F.2d at 25.

**11.** Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

on the inference that he or she was acting in conformity with past misconduct rather than upon the government's proof beyond a reasonable doubt that defendant committed the offense charged. *United States v. Bailleaux,* 685 F.2d 1105, 1109 (9th Cir. 1982).

Although it takes little effort to envision the type of circumstances in which references to a defendant's prior felonies would actually prejudice the accused and merit reversal of the conviction under § 922(g), Lowe's case does not present such a circumstance.[12] *Accord Castillo,* 550 F.2d at 855. Actual prejudice occurs if an error "had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Based on our review of the trial record, we conclude that the limited references to Lowe's prior convictions were so narrowly circumscribed that the error at trial was harmless.

To begin with, Lowe's stipulation to the three previous convictions for the purpose of § 924(e) and his successful motion *in limine* to prevent any mention of the convictions at trial kept the jury from ever hearing anything about the types of previous crimes Lowe had committed. Thus the degree of prejudice that might normally stem from a more detailed explanation of the type of crimes involved is absent in this case. Additionally, the jury was instructed that the stipulation to Lowe's prior convictions constituted an agreement between the parties about one of the elements of § 924(e) and that the jury did not need to determine the matter. Finally, the uncontradicted evidence of Lowe's guilt of violating the predicate firearm possession offense was overwhelming. Lowe presented no evidence or witnesses on his behalf. The government on the other hand, sup-

ported each element of its case with the testimony of one or more witnesses. For example, the bartender at the Katydid Tavern testified about the fray between Lowe and another patron and her telephone call to the police. She also stated that she observed the police search Lowe and recover a gun. Correspondingly, each of the three officers involved in Lowe's arrest testified about searching Lowe and finding a .22 caliber revolver stuck in the back of his belt. As we noted in part I, *supra,* the government presented expert testimony sufficient to establish the interstate character of the firearm, which was put into evidence as an exhibit. In light of this evidence, we are able to say "with fair assurance, after stripping away the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Pirovolos,* 844 F.2d at 421 (upholding defendant's conviction for felony possession of a firearm in violation of § 922(g) against a challenge to erroneous admission of prior felonies). Accordingly, the judgment of the district court is

AFFIRMED.

---

12. Although we need not decide what procedures are constitutionally mandated when the government seeks enhanced sentencing for a defendant who meets the requirements of § 924(e), our holding today should make it clear that the indictment should not contain references to a defendant's prior felony convictions beyond the initial one required for the predicate offense, and that the additional convictions are pertinent only for the purpose of sentencing the defendant under § 924(e). The concerns raised by this case and *Pirovolos,* 844 F.2d at 420, would be avoided if the government followed such a course in accordance with its repeatedly stated belief that § 924(e) is a sentence-enhancement provision.