**The UNITED STATES of America, Plaintiff-counterdefendant,**

v.

**EVERGREEN MEDIA CORPORATION OF CHICAGO, AM, Licensee of Radio Broadcast Station WLUP (AM), Defendant-counterplaintiff,**

**and**

**The American Civil Liberties Union of Illinois, Intervenor-defendant counterplaintiff.**

No. 92 C 5600.

United States District Court, N.D. Illinois, E.D.

Aug. 24, 1993.

Bruce A. Taylor, Sp. Atty., Crim. Div., U.S. Dept. of Justice, Jane E. Mago, Roberta L. Cook, Sp. Attys. to the U.S. Atty. Gen., Washington, DC, for plaintiff.

David F. Randell, Latham & Watkins, Chicago, IL, Eric L. Bernthal, Reed M. Hundt, Karen Brinkmann, Raymond B. Grochowski, Latham & Watkins, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### STATEMENT OF FACTS

This is an action by the Federal Communications Commission ("FCC") to collect a forfeiture penalty imposed against Evergreen Media Corporation of Chicago (AM) ("Evergreen"), the licensee of WLUP–AM, a Chicago radio station, for the broadcast of obscene, indecent or profane language in violation of 18 U.S.C. § 1464. 47 U.S.C. § 504(a). The incidents leading to the FCC's order of forfeiture occurred on programming, during the afternoon in August 19, 1987 and March 30, 1989. The FCC issued a notice of apparent liability in the amount of $6,000.00 on November 30, 1989. Evergreen's license was renewed by the FCC the next day, December 1, 1989. An order of forfeiture was issued over Evergreen's objection on January 28, 1991. 6 FCC Rcd 502. Evergreen's motion to reconsider was denied on October 18, 1991. 6 FCC Rcd 5950.

Counterclaims have been filed by Evergreen and an intervenor, the American Civil Liberties Union ("ACLU"), challenging the constitutionality of § 1464. This motion, by Evergreen, seeks partial judgment on the

pleadings, Fed.R.Civ.P. 12(c), to the effect that the FCC's efforts to impose a forfeiture on the basis of the August 17, 1987 incidents are untimely.

## ANALYSIS

■ In interpreting the statute of limitations Congress has provided for FCC forfeiture actions, one should keep in mind the old adage "Do as I say, not as I do." Three terms within the statute are at issue. Unfortunately, the least ambiguous of these terms creates the most havoc. With apologies to the normal precept of statutory construction to give effect to the plain meaning of the words of a statute, court must instead adopt the interpretation of the statute of limitations given in its legislative history. *See U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989) (plain meaning not conclusive in rare cases literal application will produce demonstrably at odds with intentions of drafters).

The statute of limitations for the initiation of forfeiture actions by the FCC is found at 47 U.S.C. § 503(b)(6) (1978):

No forfeiture penalty shall be determined or imposed against any person under this subsection if—

(A) such person holds a broadcast station license issued under subchapter III of this chapter and if the violation charged occurred—

(i) more than 1 year prior to the date of issuance of the required notice or notice of apparent liability; or

(ii) prior to the date of commencement of the current term of such license,

whichever is earlier so long as such violation occurred within 3 years prior to the date of issuance of such required notice; or ...

■ Three terms are at issue here. The first is the phrase "current term." The FCC contends that this refers to the license term in effect at the time of the issuance of the notice of apparent liability. Evergreen posits that it refers to the license term in effect at the time of imposition of the order of forfeiture. The court concludes that the FCC's position is correct, and that this term is not ambiguous.[1]

Evergreen theorizes that its construction must be correct because the prefatory language of § 503(b)(6) refers to imposition of a forfeiture penalty, not imposition of a notice of liability. This also true of the FCC's own interpretation of the statute. 47 C.F.R. § 1.80(c)(1) (1993), but this choice of language is without significance. The word "forfeiture" is used rather than "notice" because forfeiture is the actual remedy imposed on the licensee. Notice of liability without further action is meaningless. This point is made obvious by the application of the same language to non-licensees in § 503(b)(6)(B).

This point also explains why the FCC's interpretation of the term is correct. Imposition of forfeiture, absent notice and an opportunity for hearing in front of the Commission, cannot occur without the issuance of notice of apparent liability. 47 U.S.C. § 503(b)(4)(A). Under Evergreen's interpretation of the phrase, when the Commission issues such notice upon a broadcaster, the parties must then wait until the order of forfeiture is issued to determine if the notice—the prerequisite to the forfeiture order—was timely issued. This does not make sense, and could not have been the intent of Congress.

■ The second term at issue is "such required notice." Evergreen has adopted no position on the meaning of this term, finding it unnecessary to its interpretation of the section. This of course has its own problems. *Freytag v. C.I.R.,* — U.S. —, —, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991). The FCC believes that the term refers to the notice of apparent liability. The court believes this interpretation to be the correct one as well. The section uses the wording "such required notice" rather than just "notice of apparent liability" because earlier, in § 503(b)(6)(A)(i), the statute refers to the

1. The court notes that the statute has been amended to define "current term" as "the last term of license for which the licensee has been granted a license by the Commission," 47 U.S.C. § 503(b)(6) (1992), but this does not explicitly resolve the matter for future litigants either.

"required notice *or* notice of apparent liability." "Required notice" plainly refers to notice of a hearing before the commission. 47 U.S.C. § 503(b)(3)(A).

The final term at issue is "whichever is earlier." Both sides have chosen to give this its obvious meaning, that whichever of the two conditions mentioned in § 503(b)(6)(A)(i & ii) occurs first acts to cut off the period in which a notice of apparent liability can issue.

■ Construing these terms as indicated, the statute of limitations prescribed in § 503(b)(6)(A) expires either one year after the incident in question, or at the expiration of the license term in effect at the time of the alleged violation,[2] whichever occurs first, but in all cases expires within three years. This position, which mirrors the Commission's regulatory provision, makes no sense. If the statute of limitations will always expire within one year at the latest, why also say that it will expire within three years at the latest. Although a degree of deference is due the interpretation of an ambiguous statute by an agency charged with its administration, the court need not accept an interpretation which is unreasonable. *National Railroad Passenger Corp. v. Boston & Maine Corp.,* — U.S. —, — – —, 112 S.Ct. 1394, 1401–02, 118 L.Ed.2d 52 (1992); *Cf. Chapman v. U.S.,* — U.S. —, —, 111 S.Ct. 1919, 1933, 114 L.Ed.2d 524 (1991) (court need not interpret an ambiguous statute to reach an absurd result). Instead of adopting this interpretation of the statute, the court will turn to its legislative history.

The FCC has found the clearest expression of Congress' intent in enacting § 503(b)(6) in the report of the Senate Commerce, Science and Transportation Committee on the matter:

> For broadcast licensee S. 1547, as reported,[3] makes the limitations period within which the FCC must issue a notice of forfeiture liability 1 year from the date on which the violation occurred, or within the current license term, *whichever is the longer period,* but not to exceed 3 years. S.Rep. No. 580, 95th Congress, 2d Sess. 7

(1978), *reprinted in* 1978 U.S.C.C.A.N. 109, 115 (emphasis added). When Congress said "earlier," they meant "later." This error was not even rectified in the Committee's section-by-section analysis of the bill. *See* 1978 U.S.C.C.A.N. at 133. However, the Committee's policy statement is crystal clear, and the court concludes it reflects the intent of Congress. Evergreen's argument that the statement is ambiguous because the Committee used the term "notice of forfeiture liability" rather than "notice of apparent liability" is without merit.

■ Applying this interpretation of the statute, the FCC's notice of apparent liability occurred over one year after the August 19, 1987 incidents, but before the expiration of the license term in which they occurred. Notice was also issued within three years of the incidents. The FCC's notice was therefore timely.

■ Evergreen makes two final arguments for judgment on the pleadings. First, it argues that the court should apply the Rule of Lenity to strictly construe § 503(b)(6) in its favor. Assuming that the Rule would be applicable to a Commission forfeiture proceeding, which the FCC does not contest, it is only triggered in instances when all manifestations of Congress' statutory intent are ambiguous. *U.S. v. Lowe,* 860 F.2d 1370, 1376 (7th Cir.1988). This is not the case here.

Second, Evergreen posits the existence of a Commission policy to issue a "clean slate" to licensees upon renewal, scotching any pending unresolved forfeiture actions. The first problem with this theory is that the Commission's policy has always been that an incumbent licensee runs on its record as a whole, although the latter part of this record may be more probative of the licensee's likely future performance. *Monroe Communications Corp. v. FCC,* 900 F.2d 351, 355

---

2. Although not discussed by the parties, the court interprets "prior to commencement of the current term of such license" as an awkwardly worded means of stating this.

3. Although the Senate bill was not passed into law, most of its language, including the statute of limitations provision, was incorporated into the House bill which became law. 1978 U.S.C.C.A.N. 109.

(D.C.Cir.1990). The second, pointed out by the FCC, is that such a "clean slate" policy deprives them of any sanction of licensee behavior short of non-renewal for incidents around the time of renewal. Again, the Senate Committee Report speaks poignantly:

> While some violations may be found during regular station inspections by FCC field personnel, the majority of violations of FCC rules are discovered at the time of broadcast license renewal. In most instances, a 1–year period for imposing a forfeiture will have lapsed by the time a station's broadcast license comes up for renewal. Under present law the Commission is left with the sole alternative of revoking a license when a forfeiture would be a much more appropriate response.

1978 U.S.C.C.A.N. at 115.

## CONCLUSION

For the foregoing reasons, Evergreen's motion for partial judgment on the pleadings is denied.